# APPENDIX VOLUME NUMBER 4

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
HONORABLE ERIC L. FRANK

_____

In Re:                                : CASE NO: 10-16541
                                      :
SUSAN M. BOLTZ-RUBINSTEIN            : CHAPTER 13
                                      :
                                      : ADVERSARY NO: 16-00265- elf
Vs.                                   :
                                      :
BAC HOME LOANS SERVICING/             :
BANK OF AMERICA, N.A. AND             :
NATIONAL RESIDENTIAL ASSETS CORP      :

**AMENDED COMPLAINT PURSUANT TO 11 U.S.C. SECTION 506(A) AND BANKRUPTCY
RULE 3012 TO DETERMINE THE VALUE OF SECURITY AND CREDITOR'S ALLOWED
SECURED CLAIM, FOR DAMAGES, SANCTIONS AND INJUNCTIVE RELIEF, AND TO VOID
THE JUNE 23, 2016 SETTLEMENT AGREEMENT**

## I.    INTRODUCTION

1.      This is an action filed by the Plaintiff, Susan Boltz-Rubinstein, (hereinafter "Plaintiff"),

for actual and punitive damages pursuant to Sections 105, 362, 501, 502, 503 and 506 of the

Bankruptcy Code, and Rules 3001, 7001(1), 7001(2), 7001(7), 7001(8) and 7001(9) of the

Federal Rules of Bankruptcy Procedure to determine the interest of the Defendants in the

residential real estate of the Plaintiff and determine the amount of the allowed secured claim, if

any, of the Defendants.

2.      This Complaint focuses on the fraud perpetrated on this Bankruptcy Court and the

Plaintiff by the Defendant BAC Home Loan Servicing/Bank of America, N.A., the purported

servicer to Defendant named creditor, National Residential Assets Corp, for knowingly filing a

false proof of claim together with fraudulent documents in support thereof, and the Defendants'

fraudulent misrepresentation of the owner of the Plaintiff's Mortgage Loan and the identity of the real party in interest.

3.      This Complaint focuses on the fraud perpetrated by the Defendants where, despite the passage of time and actual knowledge of the invalidity of the Assignment of Mortgage annexed to the proof of claim in this instant case, adduced by sworn admissions, under oath, of BAC employees, before the United States Trustee, the Defendant Bank of America, N.A. continued to conceal its actual knowledge of the invalidity from this Bankruptcy Court and plaintiff and advocated for the Assignment of Mortgage without regard to due diligence requirements and mandates of FRBP 9011.

4.      This Complaint demonstrates that the actions of Defendant BAC/Bank of America, N.A. and the named Creditor, Defendant National Residential Assets Corp created a significant risk of concrete harm to Plaintiff and Plaintiff was rendered unable to avoid injury by Defendants' acts and practices which, through deceit and nondisclosure, interfered with or hindered Plaintiff's ability to make informed decisions with regard to her bankruptcy plan or take action to avoid injury wrought by Defendants.

5.      This Complaint seeks declaratory judgment as to the precise nature and extent of any lien and debt held by either Bank of America, N.A. or the Defendant National Residential Assets Corp.

## II.    PARTIES

6.      The Plaintiff in this case is a Debtor under Chapter 13 of Title 11 of the United States Code in case number 10-16541-ELF which case was filed on August 3,  2010 and is presently pending before this Court.  An order for relief was entered in this case, pursuant to 11 U.S.C §

301, thus triggering an automatic stay, pursuant to 11 U.S.C. § 362(a) of all debt collection against the Debtors.

7.        Bank of America, N.A. is the successor by merger to BAC Home Loan Servicing, L.P. (BAC), with a principal place of business of 100 North Tryon Street, Charlotte, NC 28255.

8.        National Residential Assets Corporation is a domestic business corporation with  a principal executive office of National Residential Assets Corporation, Attention Thomas J. McCormack, Chief Executive Officer, 225 Liberty Street, New York, NY 10286.   Defendant National Residential Assets Corporation purports to be a financial institution as defined in section 3 of the Federal Deposit Insurance Act and has appeared through counsel in the instant bankruptcy case. National Residential Assets Corporation may be served by mailing a copy of the Summons and Complaint, via first class U.S. Mail, to Attention Thomas J. McCormack, Chief Executive Officer, 225 Liberty Street, New York, NY 10286.

## III.    COMPLAINT

### A.    JURISDICTION

9.        Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United States Code in that this proceeding arises in and is related to the above-captioned Chapter 13 case under Title 11 and concerns property of the Plaintiff/Debtor in that case.

10.        This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code, Section 157(b)(2) of Title 28 of the United States Code.

11.        This Court has supplemental jurisdiction to hear all state law claims, if any, pursuant to Section 1367 of Title 28 of the United States Code.

12.     The Plaintiff is informed and believes that this matter is primarily a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order. However, in the event this case is determined to be a non-core proceeding then and in that event the Plaintiff consents to the entry of a final order by the presiding United States Bankruptcy Judge.

    **B.      VENUE**

13.     Venue lies in this District pursuant to Section 1391(b) of Title 28 of the United States Code.

    **C.      RELEVANT FACTS**

14.     On August 3, 2010 the Plaintiff filed a petition for Chapter 13 Bankruptcy in the Eastern District of Pennsylvania, and was assigned case number 10-16541-ELF (hereinafter the Plaintiff's Bankruptcy Case).

15.     On March 27, 2011, Proof of Claim Number 17 was filed by Hilary Bonial of the Texas based law firm Brice, Vander Linden & Wernick, P.C. on behalf of BAC Home Loan Servicing LLP identifying Defendant National Residential Assets Corp as the creditor and further identifying Defendant BAC Home Loan Servicing LLP as the party to contact for notice purposes. (Hereinafter the "Proof of Claim 17" or "Claim Number 17" or "POC-17") (Exhibit I)

16.     Proof of Claim 17  consists of the following documents:

    A.      Official form 10 executed by "Larry Buckley as Creditor's Authorized Agent";

    B.      A single page "ITEMIZATION OF CLAIM AND SUMMARY OF SUPPORTING DOCUMENTS FOR CLAIM OF BAC HOME LOANS SERVICING LP, AS SERVICING AGENT FOR NATIONAL RESIDENTIAL ASSETS CORP. REGARDING CERTAIN COLLATERAL DESCRIBED AS: 3444 WILTSHIRE RD, FURLONG, PENNSYLVANIA 18925,  entitled, Exhibit A, a claim (POC #17) for $587,118.56 with arrears of $26,940.94;

    C.      A six page document entitled "Adjustable Rate Note" identifying the borrower as "Susan M. Boltz-Rubinstein" and the lender as "Bank of America, N.A.";

D.      A twenty seven page document containing a Bucks County Recorder of Deeds coversheet attaching a Mortgage, Adjustable Rate Rider, and Planned Unit Development Rider identifying the borrower as "Susan M. Boltz-Rubinstein" and the lender as "Bank of America, N.A.";

E.      A one page post-petition December 10, 2010 Assignment of Mortgage ("AOM"), indicating in the upper left corner that it was "Prepared by" and to be "returned to" "M. E. Wileman, Orion Financial Group",  which purports to assign the mortgage from Defendant Bank of America to Defendant National Residential Assets Corp  signed by Luanne Polak ("Polak") as Vice President of Bank of America and notarized by Michelle D. Card ("Card").

17.      Plaintiff avers that the proof of claim was filed by Hilary Bonial of the Texas based law firm Brice, Vander Linden & Wernick, P.C. without providing any supporting documentation to suggest her authorization to do so. (Exhibit J)

18.      On August 24, 2016 Plaintiff contacted the Eastern District of Pennsylvania and spoke with Ida Ayala of its Attorney Admissions Office (phone number 267-299-7099). Ms. Ayala stated that she found no records with regard to Hilary Bonial in terms of a general admission or a pro hac admission in the Eastern District of Pennsylvania which would permit her to practice in this district. However, Ms. Ayala also stated that on February 11, 2011 the Eastern District of Pennsylvania issued a correspondence to Hilary Bonial, Esquire at Brice, Vander Linden & Wernick, P.C. concerning her failure to abide by the Eastern District of Pennsylvania local rules as she had neither entered a general admission nor a pro hac admission on the docket in the case of  In re Charmaine Prater, docketed at 10-7413.  Ms. Ayala stated that the Prater matter closed shortly thereafter and therefore "nothing was done."

19.      Plaintiff avers that the proof of claim filed by BAC Home Loan Servicing is signed by "Larry Buckley as Creditor's Authorized Agent" ("Buckley") without providing any supporting documentation to suggest his authorization to do so, in violation of F.R.B.P. Rule 3001(b) and the plain language instructions as printed on the Official Form 10.

20.    Plaintiff avers that Buckley is not an employee of the named creditor or the purported servicer, but is, like Bonial, in fact an attorney with the Texas based law firm, "Brice, Vander Linden & Wernick, P.C. 9441 LBJ Freeway, Suite 250 Dallas, TX 75243" (see Exhibit K) despite not revealing this fact to the Court, while creating that impression on the proof of claim when signing simply "as Creditor's Authorized Agent."

21.    Plaintiff avers that on August 24, 2016 Plaintiff contacted the Eastern District of Pennsylvania and spoke with Ida Ayala of its Attorney Admissions Office (phone number 267-299-7099) concerning "Larry Buckley" of Brice, Vander Linden & Wernick, P.C.  Ms. Ayala stated that she found no records with regard to Lawrence Buckley either in terms of a general admission or a pro hac admission in the Eastern District of Pennsylvania which would permit him to practice in this district.

22.    The Note affixed to the proof of claim as per FRBP 3001(c) and FRBP 9011 is required to be a true copy of the original. The Note attached to the proof of claim in this case is not endorsed to the named Creditor, National Residential Assets Corp.

23.    The return address featured on the Polak Assignment of Mortgage is to a third party provider, "Orion Financial Group, Inc." Orion Financial Group, Inc. (www.orionfgi.com) is in the business of "creating and recording mortgage assignments." There is no indication of authority or personal knowledge on the part of Orion Financial Group, Inc. to participate in facilitating the transfer of an asset of any entity in the instant Bankruptcy case.

24.    On May 1, 2015 the Plaintiff filed an Adversary action against Bank of America Objecting to Claim 17 (Dkt. 258). The Objection to Proof of Claim 17 was based in part on the questionable authenticity, origin, purpose and effectiveness of the assignment of mortgage. On June 26, 2015, this Honorable Court dismissed the adversary complaint without prejudice:

A. based on possible lack of "subject matter jurisdiction over this adversary proceeding" (emphasis added), or B. "Alternatively" exercised the Court's "authority and discretion under 28 U.S.C. 1334(c)(1) to abstain from hearing this adversary proceeding" (emphasis added). In setting forth a decision to "abstain" from that adversary proceeding, this Honorable Court cited Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp., 549 U.S. 422, 429-31 (2007) for the proposition that when doing so a federal court "need not necessarily determine whether it has subject matter jurisdiction."

25.     On May 4, 2016 Defendant named creditor National Residential Assets Corp filed a motion to lift the automatic stay as to Plaintiff's residence.

26.     On June 23, 2016, based on the limited facts before the Court on that date, Plaintiff entered into a settlement agreement with purported Counsel for National Residential Assets Corp. This Honorable Court adopted the terms of said settlement agreement memorialized in an Order (Dkt. 293) which reads:

*AND NOW, this 23rd day of June, 2016 at Philadelphia, by agreement between the parties in open court on June 23, 2016, it is:*

*ORDERED THAT:*

*1. The Motion for Relief from the Automatic Stay filed by National Residential Assets Corp. ("National") is GRANTED.*

*2. The automatic stay is terminated effective upon the entry of this Order with respect to the real property located at 3444 Wiltshire Road, Furlong, PA 18925 ("the Property") in order to permit National to enforce its in rem rights in the Property, if any, pursuant to applicable nonbankruptcy law.*

*3. Nothing in this Order constitutes a determination that National is the holder of the Note or Mortgage referenced in the Motion and all such issues may be determined by another court of competent jurisdiction.*
(Attached as Exhibit L)

27.     Defendant Bank of America was not named or referred to in the above settlement order as a creditor permitted to proceed against Debtor's property. Instead, the stay was lifted "*in order to permit __National__ to enforce its in rem rights in the Property, if any.*" [Emphasis added] The stay was not lifted in favor of Bank of America, nor in favor of any other entity. As such, according to the settlement agreement, neither Bank of America, nor any entity besides Defendant named creditor National Residential Assets Corp, may continue in foreclosure proceedings.

28.     Since only an order of the bankruptcy court can authorize any further progress in the stayed proceedings, it follows that the continuation of the stayed proceeding can derive legitimacy only from the bankruptcy court order. For these reasons, the terms of an order lifting the automatic stay are strictly and narrowly construed. *Griffin v. Wardrobe* (*In re Wardrobe*), 559 F.3d 932, 935 (9th Cir. 2009); *InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 328 F. Supp. 2d 522, 528-29 (M.D. Pa. 2004) ("It is axiomatic that, due to the presumptively expansive scope of the automatic stay, relief from the stay must be narrowly construed."); *Noli v. Comm'r of Internal Revenue*, 860 F.2d 1521, 1525 (9th Cir. 1988); *Casperone v. Landmark Oil & Gas Corp.*, 819 F.2d 112, 114 (5th Cir. 1987). Importantly, the relief available to a creditor is limited to that which was specifically requested in the motion for relief. *Wardrobe*, *supra*, *citing Thornburg v. Lynch (In re Thornburg)*, 277 B.R. 719, 726-27 (Bankr. E.D. Tex. 2002) for the proposition that "[t]he bankruptcy court could not, in the Relief from Stay Order, grant relief greater than what was requested in the Relief from Stay Motion: because "[a]n Agreed Order is a contract and its interpretation is governed by basic rules of contract construction . . . . [t]his court must find that the order on the motion for relief from the automatic stay granted the relief requested in the motion, no more no less . . . ." *Id.* at 726-27.

29. To date, Defendant Bank of America has not participated in filing a motion for relief from the automatic stay as to Plaintiff's residence. As such, strictly and narrowly construing the June 23, 2016 Relief from Stay Motion settlement Order, neither Defendant Bank of America, nor any entity besides Defendant named creditor National Residential Assets Corp, may continue in foreclosure proceedings.

30. In its motion for relief, Defendant named creditor National Residential Assets Corp never once referred to Bank of America.

31. On June 27, 2016 Plaintiff called the bankruptcy division of Bank of America, her alleged loan servicer, to discuss Bank of America's failure to fully respond to her RESPA requests. In discussing ownership issues around the purported December 2010 assignment of Plaintiff's loan from Bank of America as originator to National Residential Assets Corp, annexed to BAC/Bank of America, N.A.'s proof of claim (Claim 17, attached as Exhibit I), "Lillian" advised Plaintiff that Bank of America as originator had assigned her mortgage "almost immediately" after consummation of the loan in 2005, thereby contradicting that Bank of America had assigned Plaintiff's mortgage five years later in 2010. To date, Plaintiff has not received written confirmation of such as promised from Lillian.

32. On July 1, 2016, following entry of the June 23, 2016 order as to National, Bank of America employee Contrice Archie wrote to Plaintiff and 1) identified Bank of America as the servicer of the loan, not for National Residential Assets Corp (the lift stay beneficiary), but for BNY Mellon and 2) identified BNY Mellon, as opposed to National, as the "owner" of Plaintiff's loan. See Archie letter, postmarked July 7, 2016 and received by Plaintiff on July 14, 2016, attached as Exhibit A.

33.    On July 18, 2016, despite Bank of America's July 1, 2016 admissions that it does not

service National Residential Assets Corp  (the lift stay beneficiary) and that Plaintiff's loan is

owned not by National Residential Assets Corp  (the lift stay beneficiary) but by BNY (above),

Bank of America mailed to Plaintiff an Act 91 Notice received on July 21, 2016. (Exhibit B).

34.    Assuming that the assignment of mortgage had not already been determined invalid

(below), Defendant National Residential Assets Corp, without involvement of Defendant Bank

of America, could have issued the Act 91. See

http://www.phfa.org/forms/hemap/Act_91_Advisory_Notice_Update.pdf

which reads: "Implementation Timeline: As a reminder, the new form of Act 91 Notice must be
used no later than the implementation deadline of September 1, 2016. Prior to September 1,
2016, mortgage lenders and loan servicers may use the current form of notice or the new form of
Act 91 Notice." [emphasis added]

35.    Under these circumstances, Defendant Bank of America may not pursue foreclosure

proceedings and/or collection efforts, especially on behalf of a party who is not even the

beneficiary of the motion for relief from stay order and whom it denies acting as servicer for.

36.    On July 19, 2016 Defendant Bank of America followed up its July 18, 2016 Act 91

Notice with a loan assistance help letter warning of the need to avoid "foreclosure rescue" scams.

(Exhibit C).

37.    On July 20, 2016 Defendant Bank of America followed up its July 18, 2016 Act 91

Notice with a second loan assistance help letter again warning of the need to avoid "foreclosure

rescue" scams. This letter set a response deadline of "no later than August 4, 2016." (Exhibit D).

38.    On August 3, 2016, in case there was any doubt as to Defendant Bank of America's July

1, 2016 admissions (above), Bank of America employee Contrice Archie again wrote to Plaintiff

and 1) identified Bank of America as the servicer of the loan - not for National (the lift stay

beneficiary) - but for BNY Mellon and 2) identified BNY Mellon, as opposed to National, as the

"owner" of Plaintiff's loan. See Archie letter, postmarked August 5, 2016 and received by Plaintiff on August 8, 2016, (Exhibit E).

39.     On August 5, 2016 Defendant Bank of America followed up its July 18, 2016 Act 91 Notice with a third loan assistance help letter again warning of the need to avoid "foreclosure rescue" scams. This letter set a response deadline of "no later than August 20, 2016." (Exhibit F). August 20, 2016 is the deadline set forth in the Act 91 notice. (See Act 91 notice attached as Exhibit B setting forth 33 days from July 18, 2016).

40.     On August 10, 2016, Plaintiff filed a *Motion Against Bank of America, N.A. For Relief From Violation of Automatic Stay And Creditor Misconduct And Request For Sanctions* (subsequently "denied without prejudice for failure to comply with the rules of court"). Immediately thereafter, Plaintiff sent an email (Exhibit G) attaching the Motion to Bank of America employees Contrice Archie and Cynthia Mech, Supervisor of Bank of America's Bankruptcy Department, and notifying them of the following:

"You are in clear and continued violation of the automatic bankruptcy stay by your foreclosure proceedings in regard to my home at 3444 Wiltshire Road, Furlong, PA 18925. I insist that you retract your Act 91 notice immediately."

41.     Despite this communication and request that Bank of America discontinue its collections efforts against Plaintiff, the Act 91 has not been revoked.

42.     To the extent Defendant Bank of America is pursuing debt collection by virtue of an Act 91 as a servicer, by Defendant Bank of America's own admissions, it is not doing so as servicer for National, the only entity that has obtained an order allowing relief from the automatic stay. Instead, Bank of America has twice admitted (above) that it is acting as *servicer* for BNYM as the "owner" of Plaintiff's loan.

43.     While the business model of the "bank as servicer" for alleged loan owners may allow "servicers" to act on behalf of the alleged loan holder, by filing a motion for relief from the

automatic stay, to do so a servicer must make "*an unambiguous representation or declaration setting forth the servicer's authority from the present holder of the note to collect on the note and enforce the deed of trust [mortgage]. If questioned, the servicer must be able to produce and authenticate that authority.*" <u>In re: Peter A. Jacobson and Maria E. Jacobson</u>, Debtors, UBSC WDWA, Bankruptcy Case No. 08-45120.

44.     If Bank of America intended to proceed with collection or foreclosure actions on behalf of a party other than National Residential Assets Corp (the motion for stay relief beneficiary), Bank of America should have filed a Motion For Relief From The Automatic Stay and sought an order allowing it to do so. Bank of America did not file such a motion. It could not do so as servicer for National, on whose behalf it has filed a proof of claim (now confirmed as fraudulent, by Bank of America written communication and deposition testimony), because Bank of America could not make *an unambiguous representation or declaration setting forth its authority from National to collect on the note and enforce the mortgage and note. Certainly if questioned,* Bank of America *would not be able to produce and authenticate that authority.* This is especially so where, as here, <u>outside of this bankruptcy court</u>, Bank of America has repeatedly identified itself as the servicer of the loan - not for National Residential Assets Corp., the motion for stay relief beneficiary, but for BNY Mellon and identified BNY Mellon, as opposed to National Residential Assets Corp, as the "owner" of Plaintiff's loan.

45.     Under these circumstances, and strictly construing the June 23, 2016 settlement agreement, Bank of America cannot pursue debt collection or foreclosure proceedings against Plaintiff at this time and its acts in that regard to date have been in violation of the automatic bankruptcy stay.

46.     The filing of a bankruptcy petition effectuates an automatic stay of all proceedings against Debtor effective on the date the petition is filed and actions taken in violation of the stay, such as Plaintiff's receipt of an Act 91 notice from Bank of America, are void, even if there were no actual notice of the stay.

47.     Once a creditor receives notice of a bankruptcy filing, the creditor has an affirmative duty to undo its violations of the automatic stay.

48.     There can be no doubt that Bank of America had knowledge of Debtor/Plaintiff's pending bankruptcy case.

49.     Plaintiff has made several good-faith attempts to have Bank of America cease its collection efforts.

50.     Bank of America's actions of continuing collection efforts and further refusing to cease its collection efforts are in direct violation of the automatic stay.

51.     Bank of America was listed as a creditor on Debtor/Plaintiff's bankruptcy petition filing, had been advised of her pending bankruptcy, and was the subject of various court orders in this bankruptcy.

52.     As set forth above, just since the entry of this Honorable Court's June 23, 2016 order alone, Bank of America has twice written to Plaintiff - once prior to its Act 91 Notice and once after its Act 91 Notice - confirming that Bank of America does not act as servicer for National, the entity to whom the motion from relief from stay order inures.

53.     A willful violation of the automatic stay occurs when the creditor knew that the stay had been invoked and deliberately intended the action that violated the stay.

54.     Bank of America's actions of deliberately pressuring and harassing Plaintiff through its Act 91 and three related communications, when the stay has not been lifted as to Bank of

America or as to any other entity besides National Residential Assets Corp, an entity which Bank of America admits it does not service and does not own Plaintiff's loan, constitute a willful violation of the automatic stay in place for Debtor/Plaintiff.

55.     Plaintiff avers that following the lift stay Plaintiff learned that the two BAC employees - Luanne Polak ("Polak"), Vice President of Bank of America who purportedly signed the AOM, and Michelle Card ("Card") who purportedly notarized the signature of Polak - both of whom participated in the preparation of the December 10, 2010 BAC Assignment of Mortgage ("AOM") from Defendant Bank of America to named creditor Defendant National Residential Assets Corp annexed to BAC Home Loan Servicing's Proof Claim 17, also participated in the preparation of the AOM, dated October 21, 2010, also filed by BAC Home Loan Servicing in the bankruptcy case of In re Robert Singleton, Case No. 10-13683-JLG, before the Honorable Judge James L. Garrity, United States Bankruptcy Judge, in the Southern District of New York. (Singleton Claim #4-1, 4-2, 4-3)

56.     The United States Trustee objected to the POC in the Singleton matter. (10-13683-JLG Dkt. 60; attached here as Exhibit H). On June 17, 2011, counsel for Debtor Robert Singleton and the United States Trustee conducted the deposition of Michele Card ("Card"), the notary for the AOM. (10-13683-JLG Dkt. 60; attached here as Exhibit H). On September 28, 2011, counsel for the Debtor and the United States Trustee took the deposition of Luanne Polak ("Polak"), Card's supervisor and the person who signed the AOM. (10-13683-JLG Dkt. 60, attached here as Exhibit H). On September 30, 2011 counsel for the Debtor took the deposition of Cynthia Mech ("Mech") who was produced by BAC as the Rule 30(b)(6) witness.  (Copies of excerpts from the deposition transcripts of Card, Polak and Mech are attached as Exhibits E, F and G, respectively

to the Singleton DOJ Objection to Claim - attached here as Exhibit H. The full transcripts of Polak, Card and Mech are available upon request).

57.     After protracted discovery, it came to light, that based upon the sworn testimony of Polak and Card before the United States Trustee, that Polak and Card AOMs, purportedly notarized in New York, are under relevant New York law invalid, and beyond their invalidity are false and/or otherwise fraudulent documents presented for the purpose of enticing the reliance of the bankruptcy Courts, the Chapter 13 Trustees, the Plaintiffs and the other creditors in bankruptcy cases.

58.     New York state law is clear that the effect of an invalid acknowledgment is a failure of the document. *Garguilio v. Garguilio*, 122 A.D.2d 105 (2d Dep't 1986) (outlining the requirements of an acknowledgment and rejecting efforts to substitute the requirements of RPL §303 with a subsequent affidavit).

59.     Plaintiff avers, as did the United States Trustee in the <u>Singleton</u> bankruptcy, that the practice at BAC in regard to the Polak and Card AOMs, in which there was no acknowledgment of the signature in front of the notary, clearly violated the notary requirements of New York State.

60.     Further,  Plaintiff avers that, as adduced by the sworn testimony of Polak and Card in the <u>Singleton</u> bankruptcy, BAC did not implement a review process in connection with assignments of mortgage at BAC, in particular those signed and notarized by Polak and Card at the same time that Plaintiff's AOM was processed. See Exhibit H, Polak Tr. at 20: 12-15.

61.     Plaintiff avers that the obvious failure of the acknowledgment in the AOM constitutes an independent basis  to invalidate it.

62.     The form acknowledgment in the AOM annexed to Proof of Claim 17 states as follows:

"On 12/10/10, before me the undersigned, personally appeared Luanne M. Polak who acknowledged that he/she is Vice President of/ for BANK OF AMERICA, N.A. and that he/she executed the foregoing instrument and that such execution was done as the free act and deed of BANK OF AMERICA, N.A."

63.      The acknowledgment in the AOM annexed to Proof of Claim 17 thus states that Polak (1) personally (2) appeared before Card and (3) acknowledged her signature. However, the form acknowledgment is not accurate, because Polak testified that she did not personally appear before Card to acknowledge her signature.

64.      In the <u>Singleton</u> bankruptcy Card and Polak testified under oath unequivocally about the procedures in place at the time of the signing. Card testified that "[Polak] would not have been present when I notarized this." See Exhibit H, Card Tr. at 37: 2-9, and, Polak testified that:

"I don't remember doing this particular assignment, but <u>when I did my work for signing</u>, I would put it back in the folder, put it on the desk behind me to the admin[istrative] assistant. . . <u>Anything</u> that needed to be notarized, she would take to a person that was familiar with my signature and leave it for [him/her, who] was available that day, and would leave it for [him/her] to sign." [emphasis added]

See Exhibit H, Polak Tr. at 83: 5-13; see also Polak Tr. at 26:4-26:16, 82:25-83:24, 84:15-85:3; See Exhibit H, Card Tr. at 38:21-39:8, 41:10-42:5; and Exhibit H, Mech Tr. at 194:14-194:18, 194:22-195:9.

65.      Card and Polak also both testified in <u>Singleton </u>that neither reviewed the information on the AOMs for accuracy. See Exhibit H, Card Tr. at 18: 12-24 ("I don't check it for accuracy or anything to that nature. I usually just notarize it.")); See Exhibit H, Polak Tr. at 20:8-11 ("Q: Okay. With respect to the assignments of mortgages that you signed, did you typically review them before you signed them? A: No".

66.      In addition to signing the AOM, Polak was a bankruptcy unit manager at BAC's Getzville, New York office, responsible for all bankruptcy filings in the Northeast. See Exhibit H, Polak Tr. at 13:5-15:4. Polak testified that there were no procedures in place for reviewing assignments of mortgage. Id. at 20: 12-15 ("Q: Is there a review process in your department in

connection with assignments of mortgage? And I'm focusing on the time period that this assignment was prepared in this case. A: I don't believe so.").

67.    Mech was produced by BAC as the Rule 30(b)(6). Mech was Polak's supervisor and generally responsible for all bankruptcy operations at BAC's Getzville office, as well as an office in North Carolina. See Exhibit H, Mech Tr. at 11:19 - 12:11. Mech, who supervises 120 employees at BAC (Id. at 11:25-12:3), described Card as the BAC employee in charge of the proofs of claims. See Exhibit H, Mech Tr. at 83: 4-6 (Ms. Card "was responsible for working with the attorney to resolve the issue with the assignment.").

68.    In the absence of the <u>Singleton</u> testimony, this Court might have assumed that the assignment annexed to POC 17 was properly notarized.

69.    The invalidity of the <u>Singleton</u> AOM and Plaintiff's AOM, are a result of a systematic course of conduct that affected thousands of notarizations. See Exhibit H, Card Tr. at 14:8-14:10, 15:11-15:15 (Card notarized 10 documents a day and was one of three people in Getzville who notarized documents; this indicates that, over one year, Card may have notarized about 2500 documents all by herself.)

70.    Plaintiff avers that, based upon sworn <u>Singleton</u> testimony, before the United States Trustee in which Polak made clear that she did not execute the Assignment of Mortgage in the presence of the Notary, Card, the Assignment is invalid, the Notary Acknowledgment is false, and the AOM is a false and/or otherwise fraudulent document presented to and filed with the Bankruptcy Court for purposes of enticing reliance of the Court, the Debtor, and the Trustee.

71.    Plaintiff avers that, based upon sworn <u>Singleton</u> testimony, before the United States Trustee in which Card, the Notary, made clear that she did not notarize the Assignment of Mortgage in the presence of the signer, Polak, the Assignment is invalid, the Notary

Acknowledgment is false, and the AOM is a false and/or otherwise fraudulent document presented to and filed with the Bankruptcy Court for purposes of enticing reliance of the Court, the Debtor, and the Trustee.

72.     Plaintiff avers that, as set forth more completely herein below, the Polak Assignment is an invalid and void assignment manufactured by BAC/Bank of America for the purpose of enticing reliance by the Bankruptcy court and the parties in interest.

73.     Polak's sworn testimony revealed that she lacked any personal knowledge regarding the Plaintiff's mortgage loan and further lacked any personal knowledge to determine that Bank of America, N.A. had any ownership or control over the Plaintiff's mortgage loan or had the right to transfer the loan.

74.     At all relevant times the Defendant BAC/Bank of America, N.A. possessed actual knowledge that the Polak Assignment of Mortgage annexed to POC 17 is an invalid and false document.

75.     Defendant BAC/Bank of America, N.A. submitted the Polak Assignment of Mortgage annexed to POC 17, with actual knowledge that it was an invalid and false document, for the purpose of enticing the reliance of the Court, the Plaintiff, the Chapter 13 Trustee and all interested parties.

76.     Defendant BAC/Bank of America, N.A. submitted the Polak Assignment annexed to POC 17, with actual knowledge that it was an invalid and false document, for the purpose of filing a false Proof of Claim in the Plaintiff's Bankruptcy case.

77.     Defendant BAC/Bank of America, N.A. submitted the Polak Assignment annexed to POC 17, with actual knowledge that it was an invalid and false document, for the purpose of

seeking to collect a debt not owed to the named Creditor, i.e., Defendant National Residential Assets Corp.

78.     Despite passage of time and Defendant BAC/Bank of America, N.A.'s actual knowledge of Polak's sworn admissions under oath, before the United States Trustee, that the Polak Assignment is invalid, the Defendant BAC/Bank of America, N.A., Defendant National Residential Assets Corp and their attorneys of record continued to advocate for the Polak Assignment of Mortgage in this instant case without regard to due diligence requirements and mandates of FRBP 9011.

79.     Despite actual knowledge on Defendant BAC/Bank of America, N.A.'s part, the Defendants failed to advise the court, the Plaintiff, the Chapter 13 Trustee and other creditors who rely on the integrity of the documents filed by Defendant BAC/Bank of America, N.A. and Defendant National Residential Assets Corp and their attorneys, in the Plaintiff's bankruptcy case, that the purported Assignment of Mortgage submitted in support of the Proof of Claim is not only a bogus document but is invalid under the law of the state in which it was purportedly notarized.

80.     Defendant, National Residential Assets Corp, at the time Proof of Claim 17 was filed and at all times relevant was not assignee of a valid assignment of Note.

81.     Defendant, National Residential Assets Corp, at the time Proof of Claim 17 was filed and at all times relevant, did not hold a note bearing a valid endorsement.

82.     Despite actual knowledge on Defendant BAC/Bank of America, N.A.'s part, the Defendants failed to advise the court, the Plaintiff, the Chapter 13 Trustee, and other creditors who rely on the integrity of the documents filed in the Plaintiff's bankruptcy case that there was

no valid endorsement or assignment available at the time Proof of Claim 17 was filed to support Proof of Claim Number 17.

83. The Mortgage affixed to the proof of claim is required to be a certified true copy of the original as per FRBP 3001(c) and 9011. The Mortgage is in favor of the lender, Bank of America, N.A., not the named creditor. There is no valid assignment of mortgage attached to the proof of claim except for what the Plaintiff avers to be a fraudulent, robo-signed assignment of mortgage. Despite passage of time and notice to the Defendants of the deficiencies of their claim, there has been no proof offered to substantiate a valid mortgage or note payable to Defendant, National Residential Assets Corp.

84. The named creditor the Defendant, National Residential Assets Corp, does not maintain a valid lien on the Plaintiff's property.

85. The Plaintiff avers that the named Creditor, the Defendant, National Residential Assets Corp, is not a secured creditor to her real property.

86. The Plaintiff avers that the named Creditor, Defendant, National Residential Assets Corp, and the Defendant BAC/Bank of America, N.A. have presented a false and fraudulent proof of claim where the named creditor, Defendant National Residential Assets Corp, is claiming a mortgage debt not owed to it.

87. The Plaintiff avers that the named Creditor, the Defendant National Residential Assets Corp, and the Defendant BAC/Bank of America, N.A. had/have knowledge of the fact that the Note submitted in support of Proof of Claim Number 17 is not indorsed to the named Creditor, the Defendant National Residential Assets Corp. and knowingly omitted to so advise the court, the Plaintiff, the Chapter 13 Trustee and other creditors.

88.     The Plaintiff avers that the Defendants have presented a false and fraudulent proof of claim where the creditor is attempting to present to the court fabricated proof of a chain of transfers, created from whole cloth in their effort to claim a mortgage debt not owed to the named Creditor, the Defendant National Residential Assets Corp.

89.     The Plaintiff avers that the named Creditor, Defendant National Residential Assets Corp, and the Defendant BAC/Bank of America, N.A. maintained at all times relevant, knowledge of the fact that the Assignment of Mortgage produced by way of attachment to proof of claim 17 is a device fabricated to perpetuate a fraud upon this Court, the Chapter 13 Trustee, the scheduled creditors in this case, and the Plaintiff in this proceeding.

90.     The Plaintiff avers that the actions of Defendant BAC/Bank of America, N.A., with actual knowledge of the invalid assignment of mortgage, in this case constitute an unlawful attempt to collect a debt from the Debtor in violation of the automatic stay in a manner totally inconsistent with the Chapter 13 Plan, the Bankruptcy Code and the Rules of Bankruptcy Procedure.

91.     The Plaintiff avers that the Defendant BAC/Bank of America, N.A. have intentionally filed a false and fraudulent Proof of Claim as a device to perpetuate a fraud upon this Court, the Chapter 13 Trustee, and the scheduled creditors in this case and the Plaintiff in this bankruptcy proceeding.

92.     The Plaintiff have been damaged by the actions of the named Creditor, Defendant National Residential Assets Corp and the Defendant BAC/Bank of America, N.A. in that she has been and continue to be forced to expend their time and expenses toward the defense of this contested matter to protect their rights. The Plaintiff alleges that the actions of the named

Creditor, Defendant National Residential Assets Corp and the Defendant BAC/Bank of America, N.A. further constitute harassment.

93.     The actions of the named Creditor, Defendant National Residential Assets Corp and the Defendant BAC/Bank of America, N.A. created a significant risk of concrete harm to Plaintiff and plaintiff was rendered unable to avoid injury by Defendants acts and practices which though deceit and nondisclosure interfered with or hindered plaintiff's ability to make informed decisions with regard to her bankruptcy plan or take action to avoid injury wrought by Defendants.

<u>**COUNT 1**</u>
<u>**OBJECTION TO PROOF OF CLAIM**</u>

**A.     Objection to the Lack of Accounting and Amounts Claimed**

94.     The allegations of paragraphs 1 through 93 of this Complaint are hereby re-alleged and incorporated by reference.

95.     The Plaintiff objects to the Proof of Claim Number 17  as follows:

a.  The named Creditor, Defendant National Residential Assets Corp. and its purported servicer, the Defendant BAC/Bank of America, N.A., failed to attach any supporting documentation to support its claims for the amounts sought in the proof of claim. Defendants did not at any time seek leave from the court or agreement by the Plaintiff to amend Proof of Claim Number 17 to include documentation substantiating the amounts sought. This failure to attach supporting documentation violated Bankruptcy Rule 3001(c)(1) and (2) and is therefore sanctionable in the manner prescribed by F.R.B.P. 3001(c) (2) (D)(i) and (ii).

b.     The Plaintiff avers that the named Creditor, Defendant National Residential Assets Corp., does not have standing, and has not established that it ever acquired the note and the mortgage as

Case 2:19-cv-04628-ER  Document 6-4  Filed 11/24/19  Page 24 of 89

required by law and Defendant National Residential Assets Corp.  has further failed to satisfy its burden of proving the debt it alleges is owed to it.

**B.    Lack Of Standing / Failure to Bring Claim in the Name of the Real Party In Interest**

96.    The allegations in paragraphs 1 through 93 of this complaint are realleged and incorporated herein by this reference.

97.    There is no documentation provided in Proof of Claim 17 proving a complete chain of title from the originating lender, Bank of America, N.A., to the named Creditor, the Defendant National Residential Assets Corp.

98.    The named Creditor, the Defendant, National Residential Assets Corp., must prove that it is the real party in interest as the rightful owner and holder of both the Note and the Mortgage and that it has the legal right to enforce the same; Defendant National Residential Assets Corp. has failed to meet this burden.

99.    No valid writing filed with the Proof of Claim exists to demonstrate the named Creditor, Defendant National Residential Assets Corp.'s interest on the property securing such claim in violation of F.R.B.P. 3001(c)(1) and(2) and is therefore sanctionable in the manner prescribed by F.R.B.P. 3001(c) (2) (D)(i) and (ii).

100.    There is no apparent chain of transfers attached to the proof of claim to explain how or when the purported named Creditor, Defendant  National Residential Assets Corp. , came to allegedly own the Plaintiff's loan.

101.    A federal Court cannot have jurisdiction unless a party has constitutional standing. The claimant fails to provide any credible evidence as to if and when a negotiation of the Note to the named Creditor, Defendant  National Residential Assets Corp, ever occurred.

102.    The named Creditor, Defendant National Residential Assets Corp., is therefore, neither a creditor nor the real party in interest and lacks standing to file the instant claim.

103.    Defendants have no constitutional standing to file its sworn proof of claim in the Plaintiff's Chapter 13 case.

104.    In the bankruptcy courts procedure is governed by the Federal Rules of Bankruptcy and Civil Procedure. Procedure has an undeniable impact on the issue of who can assert a claim as a holder, because pleading *and* standing issues which arise in the context of our federal court system. According F.R.Civ. Pro. 17, *"[a]n action must be prosecuted in the name of the **real party in interest."*** (Emphasis added)

105.    A Proof of Claim is subject to Fed.Rules Bankr. Pro. 7017 which is a restatement of F. R. Civ. P. 17.

106.    The Plaintiff avers that the *real party in interest* in a federal action to enforce a note, whether in bankruptcy court or federal district court, is the *owner* of a note. Because the actual name of the actual note owner is not stated and there is no connection between the named creditor, Defendant National Residential Assets Corp., and the copy of the Note provided, the named Creditor, Defendant National Residential Assets Corp.'s very claim is defective.

107.    The named Creditor, Defendant National Residential Assets Corp. establishes only that it is neither the holder nor the owner of the note. The named Creditor, Defendant National Residential Assets Corp. fails to establish that it has a beneficial interest in the copy of the Note, or that it ever had a beneficial interest in the copy of the Note affixed to its proof of claim 17.

108.    The United States Constitution Article III §2 specifically limits the jurisdiction of the federal courts to "Cases or Controversies." Justice Powell delivered the Opinion of the Supreme

Court in the case of <u>Warth v. Seldin</u> addressing the question of standing in a federal court as follows:

In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of the particular issues. This query involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. In its constitutional dimension, standing imports judiciability: whether the Plaintiff has made out a ―case or controversy‖ between himself and the Defendants within the meaning of Art.III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of judiciability, the standing question is whether the Plaintiff has ―alleged such a personal stake in the outcome of the controversy‖ as to warrant *his* invocation of federal – court jurisdiction and to justify exercise of the court's remedial powers on his behalf. <u>Baker v. Carr</u> 369 U.S.186,204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663(1962). The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party…A Federal court's jurisdiction therefore can be invoked only when the Plaintiff himself has suffered ―some threat or actual injury resulting from the putatively illegal action… <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 617, 93 S.Ct. 1146,1148, 35 L.Ed.2d 536 (1973). <u>Warth v. Seldin</u> 422 U.S. 490, 498 (1975). Apart from this minimum constitutional mandate, this Court has recognized other limits on the class of persons who may invoke the courts' decisional and remedial powers. … even when the Plaintiff has alleged injury sufficient to meet the ―case or controversy‖ requirement, this Court has held that the **Plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties**. E.g., <u>Tileston v. Ullman</u>, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943).‖ <u>Warth v. Seldin</u> 422 U.S. 490, 499 (1975) (**emphasis added**)

109.    The Plaintiff in the instant case reiterates that a party seeking relief in any Federal Court "bears the burden of demonstrating standing and must plead its components with specificity." *Coyne v American Tobacco Company, 183 F.3d 488, 494 (6th Cir. 1999)*. Again, the minimum constitutional requirements for standing are: proof of injury in fact, causation, and redressability. *Valley Forge Christian College v Americans United for Separation of Church & State, Inc., 454 U.S. 464, 473 (1982)*. Furthermore, in order to satisfy the requirements of Article III of the United States Constitution, any claimant asserting rights in a Federal Court must show he has personally suffered some actual injury as a result of the conduct of the adverse party. *Coyne, 183 F.3d at 494; Valley Forge, 454 U.S. at 472*.

110.    As set forth hereinabove, the named Creditor, Defendant National Residential Assets Corp. can make no assertions as to its own interest in the outcome of the instant claim it is

making. The named Creditor, Defendant National Residential Assets Corp. further fails to establish any clear, documented, perceived injury to itself.

111.     Defendants have not shown that the named Creditor, Defendant National Residential Assets Corp. has any stake in the ownership of the Note and Mortgage as either a holder or owner. Any attempt to indicate the named Creditor, Defendant National Residential Assets Corp. as an owner of the Plaintiff's loan has been by way of fraudulent and misleading documents fabricated by employees of the Defendant BAC/Bank of America by persons who lack any personal knowledge as to the Plaintiff's mortgage loan.

112.     In the instant case there is a complete lack of any credible explanation describing how, when and from whom the named Creditor, Defendant National Residential Assets Corp., derived any rights from Defendant BAC/Bank of America, N.A. There exists beyond a clear question of fact as to the issue of Defendants' standing to file a Proof of Claim in the Plaintiff's bankruptcy case, as based upon the sworn testimony of Polak and Card before the United States Trustee, the assignment of mortgage annexed to proof of claim 17, purportedly notarized in New York, is under relevant New York law invalid, and beyond its invalidity it is a false and/or otherwise fraudulent document presented for the purpose of enticing the reliance of the bankruptcy Courts, the Chapter 13 Trustees, the Plaintiffs and the other creditors in bankruptcy cases.

## <u>COUNT II</u>
## <u>CLAIM FOR RELIEF: DECLARATORY JUDGMENT</u>

113.     The allegations in paragraphs 1 through 93 of this complaint are realleged and incorporated herein by this reference.

114.     At no time relevant to the allegations herein was the named Creditor, Defendant National Residential Assets Corp identified in the proof of claim the actual holder and the lawful owner of the mortgage note believed to be originally signed by the Plaintiff.

Case 2:19-cv-04628-ER   Document 6-4   Filed 11/24/19   Page 28 of 89

115.    Therefore, the Defendants' acting individually or together, have no constitutional standing to file a claim or otherwise participate in this Chapter 13 proceeding.

116.    Because the named Creditor, Defendant National Residential Assets Corp is not the actual holder and lawful owner or assignee of the mortgage, it has no security interest, and thus no right to seek to collect money from Plaintiff or her bankruptcy estate.

117.    As a result thereof, the Defendants should be ordered to pay back to the Chapter 13 Trustee all funds received from the Plaintiff in the form of direct mortgage payments, pre and post-petition.

118.    Plaintiff seeks a declaratory judgment holding that neither Defendant BAC/Bank of America, N.A. has an enforceable secured or unsecured claim against the property of the estate in bankruptcy; and

119.    Plaintiff also seeks a judgment declaring Defendants' claimed security interest void pursuant to 11 U.S.C. § 506(d).

## COUNT III
## CLAIM FOR RELIEF: FRAUD ON THE COURT INCLUDING FALSE AND FRAUDULENT PROOF OF CLAIM

120.    The allegations in paragraphs 1 through 93 of this complaint are realleged and incorporated herein by this reference.

121.    The proof of claim number 17 filed by Defendant BAC/Bank of America, N.A. is a false and fraudulent claim constituting fraud on the Court, the Chapter 13 Trustee, the Plaintiff and other named creditors for the following reasons:

A.      Defendant BAC/Bank of America, N.A. filed Proof of Claim Number 17 which included a copy of a Note the Defendants at all times knew was not payable to the named Creditor, Defendant National Residential Assets Corp. and which bears no endorsement to the named

Creditor, Defendant National Residential Assets Corp., a fact the Defendants knowingly omitted to disclose to the court, the Plaintiff, the Chapter 13 Trustee and the other creditors.

B.      Defendant BAC/Bank of America, N.A. filed Proof of Claim Number 17 which included a copy of a Note, the defective condition of which the Defendants failed to disclose. Specifically, the original note is defective and fails to support Proof of Claim 17 because in reality, it is not payable to the named Creditor, Defendant National Residential Assets Corp. and it does not bear an endorsement in blank or a specific endorsement to the named Creditor, Defendant National Residential Assets Corp. The Defendants purposefully and knowingly omitted to disclose the material fact of the lack of proper endorsement to the court, the Plaintiff, the Chapter 13 Trustee and the other creditors.

C.      Defendant BAC/Bank of America, N.A. filed Proof of Claim Number 17 which included a document the Defendants held out to be an assignment of mortgage which at all times the defendant knew to be an invalid, false and fabricated document manufactured by and signed by employees of the Defendant BAC/Bank of America, N.A.

122.    The Defendants knowingly made a false misrepresentation to the court;

**To Wit,** Defendant BAC/Bank of America, N.A. knowingly fabricated an assignment of mortgage to present to the court and such act of presenting a false fabricated document was committed for the purpose of enticing the reliance of the Court the Chapter 13 Trustee, the Plaintiff and the other creditors in the bankruptcy case;

123.    Defendant BAC/Bank of America, N.A and named Creditor, Defendant National Residential Assets Corp. knowingly made a false misrepresentation to the court;

**To Wit,** the Defendants knowingly claimed unsubstantiated monies alleged to be owed by the Plaintiff and presented the same to the court. Such act was committed for the purpose of enticing the reliance of the Court, the Chapter 13 Trustee, the Plaintiff and the other creditors in the bankruptcy case and for the financial gain of the Defendants;

124.    Defendant BAC/Bank of America, N.A and named Creditor, Defendant National Residential Assets Corp. omitted material, crucial information and facts from the court regarding the Note and Assignment of Mortgage at issue;

**To Wit**, the Defendants knowingly submitted a Note to the Court which is neither indorsed to Defendant National Residential Assets nor is it validly assigned to the Defendant National Residential Assets Corp.

125.    The Plaintiff has been damaged by the actions and omissions of the named Creditor, Defendant National Residential Assets and the Defendant BAC/Bank of America, N.A.;

**To Wit**, in that she has been and continues to be forced to expend his time and expenses to protect her rights.

126.    All parties of interest in the Plaintiff's bankruptcy case are harmed by the actions and omissions of the named Creditor, Defendant National Residential Assets and the Defendant BAC/Bank of America, N.A.;

**To Wit**, in that the integrity of the judicial process relied upon has been compromised by the fraudulent acts, fraudulent documents and omissions of the Defendants.

127.    This Court has authority under 11 U.S.C. § 105(a) to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."

128.    The Court should impose sanctions on Defendants for fraud as the defendants have filed false documents to support an improper claim in this case. Plaintiff therefore request that Court invoke the powers granted to it by 11 U.S.C. § 105(1) and issue such order, process or judgment necessary to address the fraud of the Defendants and to prevent any future fraud or abuse of process. In the alternative, the Plaintiff requests this Court to waive the pre-notice time requirements of Rule 9011 of the Bankruptcy Rules and to impose sanctions under that Rule.

## COUNT IV
## VIOLATION OF AUTOMATIC STAY

129.    The allegations of paragraphs 1 through 93 of this Complaint are hereby re-alleged and

incorporated by reference.

130.    Defendant BAC/Bank of America, N.A. willfully violated the automatic stay in place for

the Plaintiff as it knew that the stay had been invoked and deliberately intended the action that

violated the stay.

131.    Defendant BAC/Bank of America, N.A.'s conduct is particularly actionable as, based on

the sworn testimony of its employees it had actual knowledge of the invalidity of the Assignment

of Mortgage annexed to the proof of claim in this instant case, adduced by sworn admissions,

under oath, of BAC employees, before the United States Trustee, the Defendant Bank of

America, N.A. continued to conceal their actual knowledge of the invalidity from this

Bankruptcy Court and plaintiff and advocated for the Assignment of Mortgage.

132.    Given the egregious nature of Defendant's fraudulent acts throughout the bankruptcy and

recent violation of the stay in perpetuation of that fraud, and the emotional distress Plaintiff has

suffered as a result, Plaintiff is entitled to punitive damages pursuant to 11 U.S.C. § 362(k).


**WHEREFORE**, Plaintiff prays:

A.      That the Court disallow, expunge and strike the Proof of Claim Number 17;

B.      That the Court direct the Chapter 13 Trustee to strike Proof of Claim Number 17;

C.      That Defendant BAC/Bank of America, N.A. and National Residential Assets be

precluded from filing any amended, modified, or substitute claim in this case;

D.      That the alleged arrearages contained in the Proof of Claim be canceled and forever

discharged;

E.      That Claimant be required to pay expenses to the Plaintiff;

F.      That the Claimant provide a complete accounting of the Plaintiff's mortgage loan account, forthwith;

G.      That Defendants claimed security interest be declared void pursuant to 11 U.S.C. §506(d);

H.      That the Defendants be sanctioned pursuant to 11 U.S.C. 362(k) for having violated the automatic stay;

I.      That the Defendants be precluded from presenting any omitted information, in any form, consistent with the sanctions provided by F.R.B.P. 3001(c)(2)(D)(i);

J.      That the Plaintiff be awarded other appropriate relief, including reasonable expenses and attorney's fees consistent with the sanctions provided by F.R.B.P. 3001(c)(2)(D)(ii);

K.      That Plaintiff have such other and further relief as the Court may deem just and Proper.

Dated this 29th day of August, 2016.

By: Susan Boltz Rubinstein

/s/ Susan Boltz-Rubinstein
Susan Boltz-Rubinstein, Pro Se Debtor
3444 Wiltshire Road
Furlong, PA 18925
215-794-5160

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>SUSAN M. BOLTZ-RUBINSTEIN,<br><br>    Debtor,<br><br>    v.<br><br>BAC HOME LOANS SERVICING, BANK OF AMERICA, N.A. and NATIONAL RESIDENTIAL ASSETS CORP.,<br><br>    Defendants. | Chapter 13<br><br>Case No.: 10-16541-elf<br>ADVERSARY NO. 16-00265-elf<br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

**REED SMITH** LLP
Daniel P. Wotherspoon  (SBN 316311)
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
dwotherspoon@reedsmith.com
*Counsel for Defendants, Bank of America, N.A.*
*for itself and as successor by July 1, 2011 de*
*jure merger with BAC Home Loans Servicing,*
*L.P. and National Residential Assets Corp.*

Dated: September 19, 2016

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>SUSAN M. BOLTZ-RUBINSTEIN,<br><br>    Debtor,<br><br>    v.<br><br>BAC HOME LOANS SERVICING, BANK OF AMERICA, N.A. and NATIONAL RESIDENTIAL ASSETS CORP.,<br><br>    Defendants. | Chapter 13<br><br>Case No.: 10-16541-elf<br>ADVERSARY NO. 16-00265-elf<br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS** |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

### I.   INTRODUCTION

Throughout her bankruptcy case, Debtor acknowledged (both explicitly and implicitly) that she owed a debt to Bank of America, N.A. ("BANA") and National Residential Assets Corp. ("NRAC") (collectively, BANA and NRAC are referred to as "Defendants"): by listing the debt in her schedules, declining to object to the secured claim filed by Defendants, signing a stipulation agreeing that Defendants held a secured claim in an agreed amount, and relying on the Court-approved stipulation in connection with confirmation of her plan. Debtor had multiple opportunities to dispute the secured claim, but failed to do so in a timely fashion. Although it has now been several years since Debtor confirmed that proof of claim, and although she has repeatedly admitted that the debt is valid, she now attempts to backtrack and invalidate that debt by challenging the proof of claim. Of course, Debtor's claims are barred by *res judicata* because she already stipulated to the debt, and this Court confirmed that stipulation. Moreover, even if *res judicata* is inapplicable, Debtor's arguments to invalidate the proof of claim nevertheless fail

as a matter of law.  Finally, Debtor's claim that BANA violated the automatic bankruptcy stay by sending informational correspondence to her in July and August of 2016 fails to allege that BANA actually sought to collect a debt and therefore fails to state a claim upon which relief could be granted.  Notably, even if BANA had sought to collect a debt, its actions were relieved from the stay.  Accordingly Debtor's Complaint should be dismissed in its entirety with prejudice.

## II.    FACTS

### A.    The Note, Mortgage, and Assignment

On November 15, 2005, Susan M. Boltz-Rubinstein ("Debtor") obtained a loan from BANA in the amount of $593,334.00 (the "Loan").  [Adv. Dkt. No. 4, Ex. I, p. 4].  Plaintiff executed an Adjustable Rate Note ("Note") in favor of BANA for the amount of the Loan.  *Id.* The Loan was secured by a mortgage (the "Mortgage") of the same date on property known as 3444 Wiltshire Road, Furlong, PA 18925 (the "Property").  [Adv. Dkt. No. 4, Ex. I, p. 11-12]. On December 10, 2010, the Mortgage was assigned to National Residential Assets Corp. ("NRAC") (the "Assignment").  [Adv. Dkt. No. 4, Exhibit I, p. 37].

### B.    The Chapter 13 Bankruptcy and the Motion for Relief From Automatic Stay

On August 3, 2010, Debtor filed a Chapter 13 Voluntary Petition (the "Petition") commencing bankruptcy case number 10-16541 (the "Bankruptcy Case").  [Bankr. Dkt. No. 1]. In her Petition and accompanying schedules, Debtor identified the Mortgage as a secured claim; the claim was not listed as disputed, contingent, or unliquidated in Debtor's schedules.  [Bankr. Dkt. No. 1, p. 9].  On March 27, 2011, BANA submitted a proof of claim "as servicing agent for [NRAC]," listing NRAC as the creditor (the "Proof of Claim").  [Adv. Dkt. No. 4, Ex. I]. Thereafter, on December 9, 2011, Debtor filed her Third Amended Plan which stated, "[t]he debtor is currently in a mortgage loan modification with [BANA]... if the mortgage loan

modification is denied, [BANA] may file for relief from the automatic stay six (6) months after the date of plan confirmation." [Bankr. Dkt. No. 167, p. 2]. On December 15, 2011, Debtor entered into a stipulation with BANA (the "Stipulation"). [Bankr. Dkt. No. 168]. In the Stipulation, Debtor agreed that the Property is secured by a note and mortgage with BANA; and that when the Chapter 13 petition was filed, BANA's claim was $587,118.56 with pre-petition arrearages of $26,940.94. *Id.*, p. 1. The Stipulation was approved by the court on the same date. [Bankr. Dkt. No. 169]. This Court confirmed the Third Amended Plan on January 10, 2012. *See* Order Confirming Plan Under Chapter 13 [Bankr. Dkt. No. 187].

On May 4, 2016, after Debtor failed to make post-petition payments on her Mortgage Loan, NRAC filed a motion seeking "[r]elief from the stay for all purposes allowed by the Note, the Mortgage, and applicable law, including but not limited to allowing [NRAC] (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property." [Bankr. Dkt. No. 283, p.3]. On June 23, 2016, by agreement of the parties, the court ordered that "[t]he automatic stay is terminated . . . with respect to [the Property] in order to permit [NRAC] to enforce its in rem rights in the Property, if any, pursuant to applicable nonbankruptcy law." [Bankr. Dkt. No. 293].

Shortly after the Automatic stay was lifted, Debtor contacted BANA to "discuss[] ownership issues around the purported December 2010 assignment of [Debtor's] loan from [BANA] to [NRAC]." [Adv. Dkt. No. 4 ¶ 31]. In response, BANA sent Debtor a number of informational letters. [Adv. Dkt. No. 4, Exs. A-F].

## C. The Adversary Complaint

On August 17, 2016, Debtor initiated this adversary action by filing a new Adversary Complaint against BANA.[1] [Adv. Dkt. No. 1]. She subsequently filed an Amended Adversary Complaint on August 29, 2016 to include claims against NRAC. ("Complaint"). [Adv. Dkt. No. 4]. In the four-count Complaint, Debtor again contends that the Proof of Claim filed by Defendants should be disallowed for several reasons, including the alleged invalidity of the Assignment of the Note underlying the Proof of Claim. *See* Complaint Count I – "Objection to Proof of Claim;" Count II – "Declaratory Judgment;" and Count III – "Fraud on the Court Including False and Fraudulent Proof of Claim." Debtor also claims that BANA has violated the automatic stay by communicating with Debtor prior to seeking relief from the stay. *See id.* Count IV – "Violation of Automatic Stay." However, Debtor's claims cannot survive for a number of reasons: her assault on the viability of the Proof of Claim is completely barred by *Res Judicata*; her underlying arguments pertaining to the challenges to the Proof of Claim fail as a matter of law; and her claims for fraud on the Court and violation of the automatic stay are insufficiently pled.

## III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12 (b)(6); Fed. R. Bankr. P. 7012; *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). A court need not accept a plaintiff's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] Debtor previously filed an Adversary Complaint in May of 2015, (the "2015 Complaint"). [Adv. No. 15-0176]. Therein, she argued that the Proof of Claim filed by BANA should have been disallowed for several reasons including: fraud and various allegations pertaining to the invalidity of the Assignment. *See id.* Following a Motion to Dismiss, the Court determined that it lacked subject matter jurisdiction under 28 U.S.C. §1334(b) and dismissed the 2015 Complaint without prejudice. [Adv. No. 15-0176, Dkt. 27].

Significantly, a plaintiff must state a claim to relief that is plausible on its face. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*citing Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). As the Supreme Court has held, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The Supreme Court has further stated that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ("All civil complaints must contain more than an unadorned, the defendant-unlawfully-harmed-me accusation.") (internal quotation omitted). Furthermore, in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009.

Based on this standard of review, the Court should now dismiss Debtor's Complaint with prejudice in its entirety as to BANA.

## IV.    **ARGUMENT**

### A.    **Debtor's Claims Pertaining to the Proof of Claim and the Validity of the Assignment are Barred by the Doctrine of *Res Judicata*.**

Debtor alleges that the Proof of Claim filed by Defendants should be expunged for a myriad of reasons. *See generally* Complaint Counts I – III. However, these claims are all barred by the doctrine of *res judicata*. "The doctrines of claim preclusion and issue preclusion (*res judicata* and collateral estoppel) bar an action when the foundation upon which the claims rest has already been litigated. *Core States Bank, N.A. v. Huls America, Inc.*, 176 F3d 187 (3d Cir. 1994). Claim preclusion "gives dispositive effect to a prior judgment if a particular issue, although not litigated, ***could have been raised*** in the earlier proceeding. Claim preclusion

requires: (1) a final judgment on the merits in a prior suit involving: (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *Board of Trustees of Trucking Employees Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992) (emphasis added; citations omitted). If these three factors are present, a claim that was or **could have been** raised previously must be dismissed as precluded. Importantly, a "confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation." *Donaldson v. Bernstein*, 104 F.3d 547, 554 (3d Cir. 1997) (quoting *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989); *Crop-Maker Soil Servs. v. Fairmount State Bank*, 881 F.2d 436, 440 (7th Cir. 1989) ("Public policy supports res judicata generally, but in the bankruptcy context in particular"). *See also Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203 (3d Cir. 2000) (explaining "[c]laim preclusion commonly occurs when a party fails to raise issues in the plan confirmation process that could have been addressed in that forum, or fails to appeal the confirmation order"); *In re Brown*, 399 B.R. 574 (D. Conn. 2008) (debtor was bound by res judicata effect of confirmed plan, and could not belatedly modify plan); *Ruhl v. HSBC Mortg. Services, Inc.*, 399 B.R. 49 (E.D. Wis. 2008) (debtors were barred by *res judicata* effect of their confirmed plans from belatedly suing to recover excess interest which they themselves had proposed to pay); *In re Starling*, 251 B.R. 908 (Bankr. S.D. Fla. 2000) (debtor was barred by res judicata effect of plan confirmation order from objecting to amount of mortgage arrearage claim, where plan provided for payment of mortgage arrearage claim in full in amount of mortgagee's proof of claim).

Here, all three *Centra* factors are satisfied. First, the confirmation of the Third Amended Plan constitutes a final judgment on the merits and confirms the previous Stipulation approved by this Court. *Bernstein*, 104 F.3d 547, 554. Debtor's Third Amended Plan was confirmed by

Order of Court dated January 10, 2012. [Bankr. Dkt. No. 187]. Next, the present adversary action is based on a claim that should have been raised prior to Debtor agreeing to the Stipulation and pursuing confirmation of the Third Amended Plan – which includes treatment of Defendants' claim, to which Debtor stipulated. Finally, the present adversary action involves the same parties (Debtor and Defendants). Specifically, the present action involves the Proof of Claim filed by Defendants which Debtor now seeks to invalidate despite her decision to enter into the Stipulation. As a result, any claim that could have been brought prior to this Court's approval of the Stipulation and confirmation of the Third Amended Plan—including any objections to the Proof of Claim or to the documents supporting that Proof of Claim—is now barred by the doctrine of *res judicata*.

Not only did Debtor acknowledge and agree to the Defendants' debt in her Third Amended Plan, she also acknowledged and agreed to the claim asserted by Defendants in a Stipulation *prior to* confirmation of the Third Amended Plan. Specifically, Debtor stipulated that her residence is "secured by a note and mortgage with creditor, [BANA]." [Bankr. Dkt. No. 168]. She also agreed that at the time of filing the bankruptcy petition, BANA's claim was $587,118.56. *Id.* Furthermore, Debtor included the debt owed to Defendants in her original voluntary petition filed with the court and she did not indicate that she disputed the claim. [Bankr. Dkt. No. 1, p. 9]. She later acknowledged the debt in her Third Amended Plan wherein she stated "[t]he debtor is currently in a mortgage loan modification with [BANA] . . . if the mortgage loan modification is denied, [BANA] may file for relief from the automatic stay six (6) months after the date of plan confirmation." [Bankr. Dkt. No. 167, p. 2]. The Third Amended Plan was confirmed by Order of Court dated January 10, 2012. [Bankruptcy Dkt. No. 187]. If

Debtor intended to dispute the debt, the Proof of Claim, or the documents supporting the Proof of Claim, she needed to do so in her proposed Chapter 13 plan.  She did not.

Because the debt and Proof of Claim has already been acknowledged and agreed to by Debtor, and because the court's Order confirming the plan bars any further claims to invalidate the debt or challenge the Proof of Claim; all claims by Debtor seeking to invalidate the debt (Claims I – III) should be dismissed in their entirety with prejudice.

**B.     Debtor's Underlying Arguments Seeking to Invalidate the Debt Fail As a Matter of Law**

If the Court concludes that Debtor's claims are not barred by *res judicata*, the bases upon which she seeks to invalidate the debt nevertheless fail as a matter of law.

### 1.   Debtor Does Not Have Standing to Challenge the Assignment

In support of her Complaint, Debtor attacks the validity of the Assignment and contends that BANA and NRAC cannot demonstrate that they are the real parties in interest. *See* Complaint, Counts I – III.  As set forth above, any claim that could have been brought prior to the confirmation of the Third Amended Plan is now barred by the doctrine of *res judicata*. Nevertheless, in Pennsylvania, "it is well-established that a borrower ... does not have standing to challenge the validity of mortgage assignments, because . . . the only interest or right which an obligor or a [claimant] has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice." *Souders v. Bank of America*, 2012 WL 7009007 at *11 (M.D. Pa. Dec. 6, 2012).  *See also Dauenhauer v. Bank of New York Mellon*, 562 Fed. App'x 473, 480 (6th Cir. 2014); *In re Washington*, 469 B.R. 587, 590 (Bankr. W.D. Pa. 2012); *In re Correia*, 452 B.R. 319, 324-25 (B.A.P. 1st Cir. 2011).  Here, Counts I – III are predicated on the validity of the Assignment.  Since Debtor lacks standing to challenge the validity of the Assignment, Counts I – III should be dismissed in their entirety with prejudice.

<u>2.</u>  <u>Debtor's Arguments Pertaining to the Owner of the Note are Misguided and Lack</u>
<u>Merit</u>

Although difficult to follow, Debtor's Complaint presents nothing more than a red
herring regarding which entity is "the 'owner' of [Debtor's] loan."  Complaint ¶ 42.  She relies
on correspondence from BANA identifying BNY Mellon as the "investor" of the Loan, and she
"avers that the *real party in interest* in a federal action to enforce a note, whether in bankruptcy
court or federal district court, is the *owner* of the note."  Complaint ¶ 106; Ex. A.  Debtor
contends that NRAC has "not shown that [it] has any stake in the ownership of the Note and
Mortgage as either holder or owner."  *Id.* ¶ 111.  On this basis, Debtor seeks to invalidate the
Proof of Claim by alleging that NRAC is not the true owner of the Note and, thus, cannot be the
one to enforce it.  However, "[e]vidence that some other entity may be the 'owner' or an
'investor' in the Note is not relevant to [a] determination [of whether a party is 'entitled to
enforce'], as the entity with the right to enforce the Note may well not be the entity entitled to
receive the economic benefits from payments received thereon."  *PHH Mortgage Corp. v.
Powell*, 100 A.3d 611, 620-21 (Pa. Super. Ct. 2014) (citations omitted).  Debtor's focus on
whether NRAC is the "the owner of the note" is misplaced and irrelevant as to whether it is able
to enforce the Note.   Accordingly, to the extent her claims rely on this distinction, they should
be dismissed in their entirety with prejudice.

**C.**     **Debtor's Fraud on the Court Claim Fails as a Matter of Law**

In Count III of her Complaint, Debtor claims that BANA and NRAC committed a "Fraud
on the Court" by "knowingly fabricat[ing] an assignment of mortgage to present to the court, . . .
knowingly claim[ing] unsubstantiated monies alleged to be owed by the [Borrower], . . . [and]
knowingly submit[ing] a Note to the Court which is neither endorsed to [NRAC] nor is validly
assigned to [NRAC]" for the purpose of enticing reliance of the Court.  Complaint ¶¶ 122-124.

However, these allegations are insufficient to sustain a claim for fraud upon the court because they are insufficiently specific and do not allege any action by an officer of the court and because they do allege the level of egregious behavior necessary to support such a claim.

<div align="center">

1.    Debtor's Claim for Fraud is Insufficiently Specific

</div>

As a threshold matter, it is well-settled that when alleging fraud or mistake, a party must state with particularity the circumstances constituting the alleged fraud or mistake. Fed. R. Civ. P. 9 (b); Fed. R. Bankr. P. 7009.  This particularity requirement is intended to ensure that a defendant has adequate notice of "the precise misconduct" it is charged with, and to safeguard against "spurious charges" of fraud that a defendant did not commit. *Silverstein v. Percudani*, 422 F. Supp. 2d 468, 471 (M.D. Pa. 2006), aff'd, 207 F. App'x 238 (3d Cir. 2006).  To satisfy the Rule 9(b) heightened pleading standard, a plaintiff must specify the time, place, and substance of the defendant's allegedly fraudulent conduct. *See United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir. 1998).  Here, Debtor's allegations in support of her fraud upon the court claim fall well short of the specificity requirements of Rule 9(b).  Her allegations are general and conclusory in nature, and do not sufficiently allege the time, place, or substance of the allegedly fraudulent conduct.  Thus, her fraud claim should be dismissed in its entirety.

<div align="center">

2.    Debtor's Fraud Claim Is Insufficiently Pled and Fails to State a Claim Upon Which Relief Can Be Granted

</div>

Even if this Court concludes that Debtor's fraud on the court claim contains sufficient detail, which it does not, her claim still fails as a matter of law.  Although actions for fraud upon the court are exceedingly rare, the Third Circuit has had an opportunity to define the concept. *See Herring v. United States*, 424 F.3d 384, 386 (3d Cir. 2005).  "In order to meet the necessarily demanding standard for proof of fraud upon the court . . . there must be: (1) an intentional fraud;

(2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court." *Id.* at 386.  The Court "further conclude[d] that a determination of fraud on the court may be justified only by '**the most egregious misconduct** directed to the court itself,' and that it 'must be supported by clear, unequivocal and convincing evidence.'" *Id.* at 386-87 (emphasis added) (quoting *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 538 F.2d 180, 195 (8th Cir. 1976)).  "[F]raud on the court must constitute egregious misconduct such as bribery of a judge or jury or fabrication of evidence by counsel." *Id.* at 390 (quotations omitted). For example, "perjury by a witness is not enough to constitute fraud upon the court." *Id.*

Here, even accepting all of Debtor's allegations as true, Debtor fails to demonstrate that an officer of the court engaged in the type of egregious conduct necessary to sustain the claim. Instead, her allegations pertaining to the alleged fraud are leveled against BANA and NRAC— neither of which is an officer of the court. *See* Complaint Count III.  Because the defendants are not officers of the court, they cannot be liable for fraud on the court as a matter of law. *See Herring*, 424 F.3d at 386.

Borrower's argument is that that BANA and NRAC represented that the Note and Assignment were true and accurate when they allegedly knew those documents were inaccurate and/or deficient. *See* Complaint Count III, ¶¶ 122-123 ("[BANA] and [NRAC] knowingly made a false misrepresentation to the court").  This alleged misconduct is similar to perjury—which "is not enough to constitute fraud on the court." *Herring*, 424 F.3d at 390.  The misconduct alleged in Debtor's Complaint is not nearly egregious enough to support a claim for fraud upon the court. *See id.*  This is especially true when accounting for the fact that Debtor herself acknowledged and agreed to the Defendants' debt in her Third Amended Plan. *See* Section

- 11 -

IV(A), *supra*. Debtor's claim for fraud upon the court should be dismissed because she does not allege that an officer of the court committed egregious conduct directed at the court itself.

Based on the foregoing, Debtor's claim for fraud on the court is insufficient and should be dismissed in its entirety with prejudice.

**D.    Debtor's claim for Violation of the Automatic Stay Fails as a Matter of Law**

In her final claim, Debtor alleges that BANA willfully violated the automatic stay by corresponding with Debtor during July and August of 2016. *See generally* Complaint ¶¶ 32-39; Exs. A – F. However, her claim in this regard fails because there is no allegation that BANA attempted to collect a debt and because even if it did, BANA was relieved from the automatic stay.

<u>1.</u>    <u>Debtor Does Not Allege that BANA Attempted to Collect a Debt</u>

The filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. § 362(a)(6). However, "[c]ommunication of information regarding a residential mortgage debt is not an 'act to collect' a debt if there is a valid purpose in communicating the information and if the communication itself is informational only; i.e., it cannot overtly demand payment or have the effect of coercing payment." *Connor v. Countrywide Bank, N.A. (In re Connor)*, 366 B.R. 133, 137-38 (Bankr. D. Haw. 2007). "A common factor in the decisions that found the particular correspondence violated 11 U.S.C. § 524(a)(2) is that the correspondence included 'a clear demand for payment, accompanied by coercion in the form of a threatened action or some other consequence for nonpayment or harassment to induce the debtor to pay.'" *In re Gill*, 529 B.R. 31, 40 (Bankr. W.D.N.Y. 2015) (citing *In re Bell*, 2014 Bankr. LEXIS 4717, at *7 (Bankr. N.D.N.Y. Nov. 13, 2014); *see also Curtis v. LaSalle Natl. Bank (In re Curtis)*, 322 B.R. 470, 484-85 (Bankr. D. Mass. 2005). Thus,

to constitute an actionable violation of the automatic stay, BANA's communication with Debtor would need to overtly demand payment. *See id.*

Here, none of the communications cited by Debtor and attached to her Complaint overtly demand a payment. *See* Complaint Exs. A – F. Indeed, many of the communications contain disclaimers indicating that they are "for informational purposes only and [are] not an attempt to collect a debt." *Id.* Exs. C, D, F. Similarly, on its face, Exhibit B—the "Act 91 Notice"—is merely a "notice that the mortgage . . . is in default, and [that] the lender intends to foreclose." *See id.* Ex. B. It is not an attempt to collect a personal debt, and it does not demand payment. *See id.* Finally, the responses to Debtor's inquiries about the servicer of the Loan do not demand payment. *See id.* Exs. A, E.

Exhibits A through F, upon which Debtor's claim for violation of the automatic stay rely, do not contain any overt demands for payment; and do not constitute acts to collect, assess, or recover a claim against the debtor. Accordingly, they are not violations of the automatic stay, and Count IV of Debtor's Complaint should be dismissed with prejudice. *See Connor,* 366 B.R. 133; *Gill*, 529 B.R. 31.

<div align="center">

2.    Even if BANA's Correspondence Demanded Payment, It's Actions were Relieved from the Stay
</div>

On May 4, 2016, after Debtor failed to make post-petition payments on the Loan, NRAC filed a motion seeking "[r]elief from the stay for all purposes allowed by the Note, the Mortgage, and applicable law, including but not limited to allowing [NRAC] (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property." [Bankr. Dkt. No. 283, p.3]. On June 23, 2016, this Court granted relief from the automatic stay "with respect to the real property located at 3444 Wiltshire Road Furlong, PA 18925." [Bankr. Dkt. 293]. To the extent any of the BANA

correspondences contained in Exhibits A-F are construed as an "act to collect," BANA is not liable for a violation of the automatic stay because such actions were relieved from stay by virtue of the June 23, 2016 Order. [Bankr. Dkt. 293]. When communicating with Debtor, BANA was acting as servicer of the Loan associated with the Property defined in that Order. *See* Complaint Exs. A-F. *See also* Complaint Ex. I, Proof of Claim at p. 3 (setting forth the "[i]temization of claim . . . of [BANA], as servicing agent for [NRAC] regarding [Debtor's Property]"). Accordingly, any potential "act to collect" associated with this Property was permissible as BANA was acting as NRAC's agent.[2]  As such, BANA's communications did not violate the automatic stay, and Count IV should be dismissed.

> **3.** **In the Alternative, the Court should Provide BANA an Opportunity to Seek Relief from the Stay**

In the event this Court determines that Exhibits A-F constitute an impermissible violation of the automatic stay, BANA respectfully requests that it be provided an opportunity to seek relief from stay.

## V.    **CONCLUSION**

For the foregoing reasons, this Motion to Dismiss should be granted and the Complaint should be dismissed with prejudice in its entirety.

Respectfully submitted,

/s/ Daniel P. Wotherspoon

Daniel P. Wotherspoon  (SBN 316311)

---

[2] Debtor's arguments pertaining to BNY Mellon's status as "owner" of the Loan are irrelevant.  As explained in Section IV(B)(2), *supra*, "[e]vidence that some other entity may be the 'owner' or an 'investor' in the Note is not relevant to [a] determination [of whether a party is 'entitled to enforce'], as the entity with the right to enforce the Note may well not be the entity entitled to receive the economic benefits from payments received thereon." *PHH Mortgage Corp. v. Powell*, 100 A.3d 611, 620-21 (Pa. Super. Ct. 2014) (citations omitted). Here, the Proof of Claim clearly listed BANA as servicing agent for NRAC. *See* Complaint Ex. I, Proof of Claim at p. 3.

REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
dwotherspoon@reedsmith.com
*Counsel for Defendants Bank of America, N.A.*
*for itself and as successor by July 1, 2011 de*
*jure merger with BAC Home Loans Servicing,*
*L.P., and National Residential Assets Corp.*

Dated:    September 19, 2016

Case 2:19-cv-05628-ER   Document 6-16   Filed 11/04/19   Page 49 of 89
Case 16-00265-elf   Doc 15-1   Filed 10/03/16   Entered 10/03/16 19:42:36   Desc
Exhibit Memo of Law In Response to Defendants Motion to Dismiss    Page 1 of 20

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
HONORABLE ERIC L. FRANK

_____

In Re:                                      : CASE NO: 10-16541
                                            :
SUSAN M. BOLTZ-RUBINSTEIN                    : CHAPTER 13
                                            :
                                            : ADVERSARY NO: 16-00265- elf
Vs.                                         :
                                            :
BAC HOME LOANS SERVICING/                    :
BANK OF AMERICA, N.A. AND                    :
NATIONAL RESIDENTIAL ASSETS CORP            :
_____

<u>**MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS**</u>

**I.        INTRODUCTION**

**A.        The Note, the Assignment of Mortgage and the Lien**

On November 15, 2005, Susan M. Boltz-Rubinstein ("Plaintiff") obtained a loan from Bank of America, N.A. in the amount of $593,334.00 (the "Loan"). Exhibit A. The Loan was secured by a mortgage (the "Mortgage") of the same date on property known as 3444 Wiltshire Road, Furlong, PA 18925 (the "Property"). Exhibit A. On December 10, 2010, the Mortgage was purportedly assigned from Bank of America N.A. to National Residential Assets Corp. (the "Assignment of Mortgage/AOM"). Exhibit B. On January 20, 2011, Bank of America recorded the AOM in Bucks County, Pennsylvania, creating a lien in favor of National Residential Assets Corp.  Exhibit B.

**B.        The Chapter 13 Bankruptcy**

On August 3, 2010, Plaintiff filed a Chapter 13 Voluntary Petition (the "Petition") commencing bankruptcy case number 10-16541 (the "Bankruptcy Case"). [Bankr. Dkt. No. 1].  In her Petition and accompanying schedules, Plaintiff identified the Mortgage with Bank of America, N.A. as a secured claim. [Bankr. Dkt. No. 1, p. 9].  On December 9, 2011, Plaintiff filed her Third Amended Plan which stated, "[t]he Plaintiff is currently in a mortgage loan modification with Bank of America ... if the mortgage loan modification is denied, Bank of America may file

Case 2:19-cv-04628-ER Document 6-16 Filed 11/04/19 Page 50 of 89
Case 16-00265-elf Doc 15-1 Filed 10/03/16 Entered 10/03/16 19:42:36 Desc
Exhibit Memo of Law In Response to Defendants Motion to Dismiss    Page 2 of 20

for relief from the automatic stay six (6) months after the date of plan confirmation." [Bankr. Dkt. No. 167, p. 2]. On December 15, 2011, Plaintiff entered into a stipulation with Bank of America. [Bankr. Dkt. No. 168]. In Defendants' Motion to Dismiss, they totally misstate what Plaintiff agreed to and what was provided for in the December 15, 2011 stipulation. In the stipulation, Plaintiff agreed to the following: "per the recommendation of the Bankruptcy Court, the undersigned parties hereby agree that Bank of America will pay the 2009 and 2010 real estate taxes of the Plaintiff to the Bucks County Tax Claim Bureau, and the Bucks County Tax Claim Bureau can and will apply said payment accordingly without a violation of the Automatic Stay."  [Bankr. Dkt. No. 169].  The Court confirmed the Third Amended Plan on January 10, 2012. [Bankr. Dkt. No. 187].  On October 1, 2012 the court entered a post-confirmation order, related to the contents of the December 9, 2011 Third Amended Plan referenced above ("[t]he Plaintiff is currently in a mortgage loan modification with Bank of America ... if the mortgage loan modification is denied, Bank of America may file for relief from the automatic stay six (6) months after the date of plan confirmation." [Bankr. Dkt. No. 167, p. 2]) which states that "Bank of America shall make no demand for payment of or seek relief from the automatic stay to initiate foreclosure proceedings…." prior to "…Bank of America's final decision on the Plaintiff's request for a loan modification." [Bankr. Dkt. No. 218].

On April 7, 2015 National Residential Assets Corp filed a Motion for Relief from the automatic stay to foreclose on Plaintiff's property, in which it stated that it did not have possession of the Note.  [Bankr. Dkt. No. 253, p. 2, paragraph 6]  Immediately after the above admission of National Residential Assets Corp, Plaintiff filed an Adversary to determine the validity of the lien and to expunge the proof of claim #17 filed by BAC Home Loan Servicing   [Adv. 15-00176 Dkt. No. 1] based in part on the questionable authenticity, origin, purpose and effectiveness of the assignment of mortgage.  In response, National Residential Assets Corp withdrew its Motion to Lift.   [Bankr. Dkt. No. 260]  On June 26, 2015, this Honorable Court dismissed the adversary complaint without prejudice: 1) based on possible lack of "subject matter jurisdiction over this adversary proceeding", or 2). "Alternatively" exercised the Court's "authority and discretion under 28 U.S.C. 1334(c)(1) to abstain from hearing this adversary proceeding". In setting forth a decision to "abstain" from that adversary proceeding, this Honorable Court cited *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 429-31 (2007) for the proposition that when doing so a federal court "need not necessarily determine whether it has subject matter jurisdiction."

**C.**    **Six Years of Abject Deceit In The Bankruptcy Court of The Eastern District of Pennsylvania**

**1.**    **BAC Home Loan Servicing/Bank of America**

For over six (6) years, from March 21, 2011 until present, BAC Home Loan Servicing/Bank of America has, through abject material misrepresentations and fraudulent AOM, sought to deceive this Bankruptcy Court, the Chapter 13 Trustee, the United States Trustee, the Plaintiff and all other parties affected by the instant bankruptcy case.

After the filing of Plaintiff's Chapter 13 petition, BAC Home Loans Servicing LLP filed a Proof of Claim as Servicing Agent for National Residential Assets Corp.  Exhibit A. In support thereof, the Proof of Claim ("POC 17") annexed the purported Assignment of Mortgage (AOM) from Bank of America N.A. (Assignor) to National Residential Assets Corp (Assignee).   Exhibit B.

The AOM was created for bankruptcy purposes as it was signed on December 2010, four (4) months post-petition, and annexed to POC 17 which was filed on March 21, 2011, seven (7) months post-petition.[1]  As noted the AOM was recorded on January 20, 2011 in the Bucks County Recorder of Deeds and thereby created a lien on Plaintiff's property on behalf of National Residential Assets Corp. Exhibit B.

On May 4, 2016 National Residential Assets Corp ("National") filed a motion to lift the automatic stay as to Plaintiff's residence. On June 23, 2016, following a settlement agreement between National Residential Assets Corp and Plaintiff, this Honorable Court granted the Motion for Relief from the Automatic Stay filed by National Residential Assets Corp. The Order [Bankr. Dkt. 293] reads:

AND NOW, this 23rd day of June, 2016 at Philadelphia, by agreement between the parties in open court on June 23, 2016, it is:
ORDERED THAT:
1. The Motion for Relief from the Automatic Stay filed by National Residential Assets Corp. ("National") is GRANTED.

---

[1] As previously noted in the Amended Adversary Complaint [Dkt. 4], as well as in a correspondence to the court [Dkt. 7] the two attorneys who facilitated the creation and filing of POC 17 are not admitted either generally or pro hac in this jurisdiction. Fed. R. Bankr. P. 9010 and 9011 plainly require that pleadings and most other forms of documentation submitted by a party who is represented by an attorney or attorneys must be signed at least by one of the party's attorneys, and that the signing attorney must be authorized to practice in this Court. As Rule 9011 states, any paper that does not comport with this requirement will be stricken, unless the omission of a qualifying signature is corrected promptly after being called to the attention of the relevant attorney or party. See also Eastern District of Pennsylvania Local Rule 83.5, Eastern District of Pennsylvania Bankruptcy Local Rule 2090-1. Despite ECF receipt of numerous notices [Dkt 4 and 7; Adv. 15-00176 Dkt. No. 1], neither Attorney Larry Buckley nor Attorney Hilary Bonial have utilized the remedial clause of Fed. R. Bankr. P. 9011 to prevent the proof of claim from being stricken from the record. Again, that clause states "an unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party." Rule 9011.

3

Case 2:19-cv-06285-ER   Document 6-16   Filed 11/04/19   Page 52 of 89   Desc
Exhibit Memo of Law In Response to Defendants Motion to Dismiss    Page 4 of 20

Case 16-00265-elf   Doc 151   Filed 10/03/16   Entered 10/03/16 19:52:36   Desc

2. The automatic stay is terminated effective upon the entry of this Order with respect to the real property located at 3444 Wiltshire Road Furlong, PA 18925 ("the Property") in order to permit National to enforce its in rem rights in the Property, if any, pursuant to applicable nonbankruptcy law.

3. Nothing in this Order constitutes a determination that National is the holder of the Note or Mortgage referenced in the Motion and all such issues may be determined by another court of
competent jurisdiction.

Only National Residential Assets Corp filed a motion to lift the automatic stay as to Plaintiff's residence.

Bank of America was not referred to in the motion. [Bankr. Dkt. 283]  Bank of America was not named or referred

to in the above settlement order as a creditor permitted to proceed against Plaintiff's property. Instead, the stay was

lifted "in order to permit National to enforce its in rem rights in the Property, if any." The stay was not lifted in favor

of Bank of America, nor any entity other than National Residential Assets Corp.

On or about June 27, 2016, following a lift stay settlement agreement between Plaintiff and National

Residential Assets Corp, Plaintiff was advised by the bankruptcy department of Bank of America that there could

not have been an Assignment of Mortgage from Bank of America N.A. to National Residential Assets Corp in

December of 2010 as Bank of America "as originator" had assigned her mortgage "almost immediately" after

consummation of the loan in November of 2005 i.e., five (5) years before December of 2010.  Accordingly, there

was nothing for Bank of America to assign in December of 2010 and the AOM is therefore a nullity.

In addition, also following the lift stay settlement agreement between Plaintiff and National Residential

Assets Corp, in July of 2016 Plaintiff learned that the two BAC employees, both of whom participated in the

preparation of the December 10, 2010 BAC Assignment of Mortgage ("AOM") from Defendant Bank of America to

named creditor Defendant National Residential Assets Corp annexed to BAC POC 17 - Luanne Polak ("Polak"),

Vice President of Bank of America who purportedly signed the AOM, and Michelle Card ("Card"), who purportedly

notarized the signature of Polak -, also participated in the preparation of the AOM, dated October 21, 2010, also

filed by BAC Home Loan Servicing in the bankruptcy case of In re Robert Singleton, Case No. 10-13683-JLG,

before the Honorable Judge James L. Garrity, United States Bankruptcy Judge, in the Southern District of New

York. (Singleton Claim #4-1, 4-2, 4-3)  The United States Trustee objected to the POC in the Singleton matter. [10-

13683-JLG Dkt. 60; attached here as Exhibit C] and took the deposition of Michele Card ("Card"), the notary for the

AOM [10-13683-JLG Dkt. 60; attached here as Exhibit C], as well as the deposition of Luanne Polak ("Polak"),

Card's supervisor and the person who signed the AOM. [10-13683-JLG Dkt. 60, attached here as Exhibit C]. and

counsel for the Plaintiff took the deposition of Cynthia Mech ("Mech") who was produced by BAC as the Rule

30(b)(6) witness. (Copies of excerpts from the deposition transcripts of Card, Polak and Mech are attached as

Exhibits E, F and G, respectively to the Singleton DOJ Objection to Claim - attached here as Exhibit C. The full

transcripts of Polak, Card and Mech are available upon request). Card and Polak testified under oath unequivocally

that Polak would not have been present when Card notarized assignments of mortgage.  Exhibit C, Card Tr. at 37: 2-

9, and See Exhibit C, Polak Tr. at 83: 5-13; see also Polak Tr. at 26:4-26:16, 82:25-83:24, 84:15-85:3; See Exhibit

C, Card Tr. at 38:21-39:8, 41:10-42:5; and Exhibit C, Mech Tr. at 194:14-194:18, 194:22-195:9. Also, Polak's

testimony, as signer of the AOM, revealed that she lacked any personal knowledge regarding the mortgage loans and

further lacked any personal knowledge to determine that Bank of America, N.A. had any ownership or control over

the mortgage loans or had the right to transfer the loans. Exhibit C, Polak Tr. at 20:8-11 ("Q: Okay. With respect to

the assignments of mortgages that you signed, did you typically review them before you signed them? A: No".)

Polak testified that there were no procedures in place for reviewing assignments of mortgage. *Id.* at 20: 12-15 ("Q: Is

there a review process in your department in connection with assignments of mortgage? And I'm focusing on the

time period that this assignment was prepared in this case. A: I don't believe so."). [2]

On July 1, 2016, following entry of the June 23, 2016 order as to National, Bank of America employee

Contrice Archie wrote to Plaintiff and 1) identified Bank of America as the servicer of the loan - not for National

Residential Assets Corp. (the lift stay beneficiary) - but for BNY Mellon and 2) identified BNY Mellon, as opposed

to National Residential Assets Corp., as the "owner" of Plaintiff's loan. See Archie letter, postmarked July 7, 2016

and received by Plaintiff on July 14, 2016, attached as Exhibit E. On July 18, 2016, despite Bank of America's July

1, 2016 admissions that it does not service National (the lift stay beneficiary) and that Plaintiff's loan is owned not

by National Residential Assets Corp.  (the lift stay beneficiary) but by BNY (above), Bank of America delivered to

Plaintiff an Act 91 Notice received on July 21, 2016. Exhibit F.[3] On July 19, 2016 Bank of America followed up its

illegal July 18, 2016 Act 91 Notice with a loan assistance help letter warning of the need to avoid "foreclosure

rescue" scams. Exhibit G. On July 20, 2016 Bank of America followed up its illegal July 18, 2016 Act 91 Notice

with a second loan assistance help letter again warning of the need to avoid "foreclosure rescue" scams. Exhibit H.

On August 3, 2016, in case there was any doubt as to Bank of America's July 1, 2016 admissions (above), Bank of

---

[2] The Singleton Settlement Agreement with Bank of America is attached as Exhibit D. The Honorable James L.
Garrity, Southern District of New York Bankruptcy Judge, filed the Settlement Agreement on the docket over the
objection of the parties. Exhibit D.
[3] In their Motion to Dismiss, Defendants fails to acknowledge that Bank of America served Plaintiff with an Act 91
and makes no mention whatsoever of the Act 91 served by Bank of America upon Plaintiff. Nor does counsel
mention that Bank of America served the Act 91 while, immediately before and immediately after doing so refuting
in writing that it services the lift stay beneficiary, National Residential Assets Corp. Exhibits E and I.

America employee Contrice Archie again wrote to Plaintiff and  1) identified Bank of America as the servicer of the loan - not for National Residential Assets Corp.  (the lift stay beneficiary) - but for BNY Mellon and 2) identified BNY Mellon, as opposed to National Residential Assets Corp., as the "owner" of Plaintiff's loan. See Archie letter, postmarked August 5, 2016 and received by Plaintiff on August 8, 2016, Exhibit I.

To the extent Bank of America is pursuing debt collection against plaintiff by virtue of an Act 91 as a servicer, by Bank of America's own admissions in two different writings, one writing immediately before the Act 91 and another writing immediately after the Act 91, it is not doing so as servicer for National Residential Assets Corp, the only entity that has obtained a lift stay order. Instead, Bank of America has twice written that it is acting as servicer for BNYM as, in Bank of America's words,  the "owner" of Plaintiff's loan. Exhibits E and I.

While the business model of the "bank as servicer" for alleged loan owners may allow "servicers" to act on behalf of the alleged loan holder, by filing a motion to lift the automatic stay, to do so a servicer must make "an unambiguous representation or declaration setting forth the servicer's authority from the present holder of the note to collect on the note and enforce the deed of trust. If questioned, the servicer must be able to produce and authenticate that authority." *In re: Peter A. Jacobson and Maria E. Jacobson*, Plaintiffs, UBSC WDWA, Bankruptcy Case No. 08-45120. If Bank of America intended to proceed with collection or foreclosure actions on behalf of a party other than National (the lift stay beneficiary), Bank of America should have filed a motion to lift and sought an order allowing it to do so. Bank of America did not file such a motion. It could not do so as servicer for National Residential Assets Corp, on whose behalf it has filed a proof of claim, because Bank of America, aware that the AOM is a nullity, could not make an unambiguous representation or declaration setting forth its authority from National Residential Assets Corp to collect on and enforce the note.. Certainly, if questioned, Bank of America would not be able to produce and authenticate that authority. This is also especially so where, as here, Bank of America has repeatedly identified itself as the servicer of the loan - not for National Residential Assets Corp, the lift stay beneficiary, but for BNY Mellon and identified BNY Mellon, as opposed to National, as the "owner" of Plaintiff's loan. Under these circumstances, Bank of America cannot pursue debt collection or foreclosure proceedings against Plaintiff at this time and its acts in that regard to date have been in violation of the automatic bankruptcy stay.

2.        **National Residential Assets Corp**

The 1757 Tapo Canyon Road, Simi Valley, CA 93063 address listed on the AOM for National Residential Assets Corp, is not the address of National Residential Assets Corp, but is, in fact, the business address for the AOM Assignor, Bank of America Home Loans". Exhibit B, Exhibit J. On November 2, 2015, following initiation of a regulatory investigation, National Residential Assets Corp filed an Amended Foreign Corporation Certificate (Exhibit K) changing its principal address to c/o BNY Mellon, Attn. Legal Department, 225 Liberty Street, NY NY 10286, signed by former Reed Smith paralegal, Susan K. Maroni, in her capacity as "Assistant Secretary of National Residential Assets Corp." (Exhibit L) The effect of National Residential Assets Corp has been to conceal securitizations and resulting defaults from both investors and homeowners. If the mortgage loans weren't physically deposited into the trusts prior to the issuance of the MBS they are subject to 100% tax penalties under 26 U.S.C. Section 860G(d)(1). However, if a failed securitization were to be concealed, there was/is no apparent tax liability. On March 1, 2016 National Residential Assets Corp filed an "Annual Report" (Exhibit M), no longer signed by or referencing Susan Maroni, in her purported capacity as "Assistant Secretary of National Residential Assets Corp." but signed by "Claudine Orloski" "Assistant Treasurer – Tax", for fiscal year ending December 31, 2015, listing Orloski for the first time as "Assistant Treasurer – Tax".

C.      **Adversary Complaint**

Following plaintiff's discovery above 1) that the AOM was clearly fraudulent as Bank of America as originator had already assigned plaintiff's mortgage five years prior to the purported AOM to National Residential Assets Corp, 2) that the Notary Acknowledgment was false as Polak did not execute the Assignment of Mortgage in the presence of the Notary, 3) that Polak lacked any personal knowledge to determine whether Bank of America, N.A. had any ownership or control over the mortgage loans or had the right to transfer the loans to National Residential Assets Corp, plaintiff was served with an Act 91 notice by Bank of America, in violation of the automatic stay and although Bank of America wrote, immediately before serving plaintiff with the Act 91 and immediately after serving plaintiff with the Act 91, that it did <u>not</u> service the lift stay beneficiary, National Residential Assets Corp. Plaintiff then filed the instant Adversary on August 17, 2016. [Dkt. 1.]

Case 2:19-cv-06281R Document 6-16 Filed 11/04/19 Page 56 of 89
Case 16-00265-elf Doc 15-1 Filed 10/03/16 Entered 10/03/16 19:12:36 Desc
Exhibit Memo of Law In Response to Defendants Motion to Dismiss Page 8 of 20

### III.     ARGUMENT

**A.     Standard of Review:  Defendants' Motion To Dismiss Pursuant to Rule 12(b)(6)**

For a complaint to survive dismissal pursuant to Fed. R. Civ. P. 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. City of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers labels and conclusions . . . will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations omitted).

The burden of proof for showing that no claim has been stated is on the moving party. *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005) (*citing Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991)). During a court's threshold review, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Rockefeller Ctr. Props., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). If a claim is dismissed pursuant to Rule 12(b)(6), the plaintiff may be granted leave to amend or reassert the claim. *In re Burlington Coat Factory Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

**B.     There Is Clear And Convincing Evidence of Fraud Relating Not Only To The Acknowledgement But Also To The Underlying AOM**

It is well settled that all conveyances made in the state of Pennsylvania must be acknowledged and recorded within 90 days.  *See* 21 Pa. Stat. Ann. § 444.  *In re Bella Vista Assocs., LLC*, 388 B.R. 99 (Bankr. D.N.J. 2008) 21 P.S. § 444 applies to all conveyances, which would include assignments of mortgages.  If a conveyance, such as an assignment of mortgage, is not acknowledged and recorded within 90 days, it shall be adjudged fraudulent and void against any subsequent purchaser. *Id.* The acknowledgment is required for the recording and perfection of a mortgage lien. *In re Armstrong*, 288 B.R. 404, 429-31 (Bankr. E.D. Pa. 2003) *citing In re Messinger*, 281 B.R. 568 (Bankr. M.D. Pa. 2002) and 21 P.S. § 42. Under Pennsylvania law, the acknowledgment does not affect the validity of the underlying document, only the ability to record it, and is not part of the document. *Messinger*, *supra*, 281 B.R. at 574. The purpose of the acknowledgment is to verify the executing party's identity

8

and voluntary intention to be bound by the terms of the document, all for the benefit of those who rely on the faith and credit of the public records. *Id.*

The presence of the parties is required for a proper acknowledgment in Pennsylvania. *In re Rice*, 133 B.R. 722 (Bankr.E.D.Pa.1991). If, as here, a notary never personally saw a party, this is a latent defect, not appearing on the face of the document. *Messinger*, *supra*, 281 B.R. at 574. The recorder would have no way of knowing of the error and would have no reason to reject the document. Pennsylvania law therefore requires proof of fraud or forgery to void the perfection of a recorded conveyance containing an acknowledgment that is complete and proper on its face. *Id.* Allowing a challenge where there is an allegation of fraud would restore the protections that may have been lost by an improper fulfillment of notarial duties. *Id.* Such a challenge, on grounds of fraud or forgery, should relate to the underlying document or transaction, rather than the acknowledgment. *Messinger*, *supra*, 281 B.R. at 574.

Here, while, as set forth above, the purpose of the acknowledgment is to verify the executing party's identity and voluntary intention to be bound by the terms of the document, all for the benefit of those who rely on the faith and credit of the public records, Polak's sworn testimony revealed that she lacked any personal knowledge regarding the Plaintiff's mortgage loan and further lacked any personal knowledge to determine that Bank of America, N.A. had any ownership or control over the Plaintiff's mortgage loan or had the right to transfer the loan to National Residential Assets Corp. Exhibit C, Polak Tr. at 20:8-11. Moreover, the acknowledgment in the AOM annexed to Proof of Claim 17, which states that Polak (1) personally (2) appeared before Card and (3) acknowledged her signature (Exhibit B) is not accurate, because Polak testified that she did not personally appear before Card to acknowledge her signature, and is therefore false. Exhibit C, Card Tr. at 37: 2-9, and See Exhibit C, Polak Tr. at 83: 5-13; see also Polak Tr. at 26:4-26:16, 82:25-83:24, 84:15-85:3; See Exhibit C, Card Tr. at 38:21-39:8, 41:10-42:5; and Exhibit C, Mech Tr. at 194:14-194:18, 194:22-195:9. The fraud relating to the underlying AOM is that in the AOM Bank of America purports to assign plaintiff's mortgage in December of 2010 to National Residential when, in fact, there was nothing to assign in December of 2010 as Bank of America had already assigned Plaintiff's mortgage almost immediately after she signed the mortgage in November 2005.[4] Moreover, as set forth below in

---

[4] Albeit in the context of a proceeding under 11 U.S.C. §544, in two bankruptcy cases - *In re Fisher*, 320 B.R. 52 (E.D. Pa. 2005) and *In re Rice*, 133 B.R. 722 (Bankr. E.D. Pa. 1991) - federal courts applied Pennsylvania state law to determine the validity of an improperly notarized mortgage as to third party creditors and, therefore, the mortgage's avoidability under 11 U.S.C. §544. In both cases the avoidance actions were instituted jointly by the respective Plaintiffs and trustees. In *Rice*, the bankruptcy court held that a mortgage that was improperly notarized -- i.e., that was notarized only after the settlement and out of the presence of the mortgagor -- was invalid against certain third parties under Pennsylvania law and therefore, could be avoided through use of the trustee's strong arm

Case 2:19-cv-04628-ER Document 6-16 Filed 11/04/19 Page 58 of 89
Case 16-00265-elf Doc 15-1 Filed 10/03/16 Entered 10/03/16 19:42:36 Desc
Exhibit Memo of Law In Response to Defendants Motion to Dismiss Page 10 of 20

Part D. 2, the purported "Mortgage Assignment" from Bank of America N.A. to National Residential Assets Corp is a nullity as it did not effect an assignment of the note under Article 9 of the UCC. and is insufficient under Article 9 to support a conclusion that National Residential Assets Corp holds any interest, ownership or otherwise, in the Note.

## C.     Plaintiff's Claims Are Not Barred by the Doctrine of Res Judicata

It is well settled that plan confirmation orders do not generally create *res judicata* effect. *In re Giordano*, 234 B.R. 645 (Bankr. E.D. Pa. 1999) (plan confirmation orders do not generally have *res judicata* effect); *In re Taylor*, 208 B.R. 828, 832-33 (Bankr. E.D. Pa. 1997) (plan confirmation orders do not generally have *res judicata* effect); *County Fuel Co. v. Equitable Bank Corp.*, 832 F.2d 290, 292 (4th Cir. 1987) (failure to object to claim creates no *res judicata* effect); *In re Norris*, 39 B.R. 85 (E.D. Pa. 1984) (order granting relief from the automatic stay in a prior bankruptcy case is not *res judicata* in a later case), *Edwards v. Duane, Morris & Heckscher LLP*, 2004 U.S. Dist. LEXIS 24177 (failure to object to claim creates no *res judicata* effect); *Calabria v. CIT Consumer Group*, (In Re Calbria) 407 B.R. 671 (W.D. Pa. 2009)(failure to object to claim creates no *res judicata* effect); *Garcia v. Doral Bank* (In re Garcia) 2014 Bankr. LEXIS 1633 (Bankr. D. P.R. 2014); *Pena v. HSBC Bank USA*, 2014 U.S. Dist. LEXIS 155888 (failure to object to claim creates no *res judicata* effect). Despite this well settled law, Defendants now contend that Plaintiff's Claims are barred by *res judicata*.

### 1.     There Had Been No Final Judgment

Assuming arguendo that plan confirmation orders <u>do</u> generally have *res judicata* effect, in this bankruptcy several factors cast doubts that the "automatic allowance under 11 U.S.C. Section 502(a) of a claim not objected to" constitutes a "final judgment" of the type that gives rise to "bar" or "claim preclusion" under strict *res judicata* principles. First, "finality" has not attached to BAC Home Loan Servicing's claim at confirmation. The plan currently binding at the time of the filing of this adversary proceeding not only allows for, but was confirmed with the expectation of, post-confirmation adjustments, through loss mitigation/modification, of the size of claim. In fact,

---

powers. The district court reached a similar conclusion in *In re Fisher. But see In re Bell*, 309 B.R. 139, 158-61 (Bankr. E.D. Pa. 2004) (Pennsylvania law requires clear and convincing evidence of fraud or forgery with respect to the underlying mortgage documents to void the perfection of a recorded mortgage containing an acknowledgment that is complete and proper on its face and absent proof of fraud or forgery, a mortgage cannot be avoided under 11 U.S.C. §544); *In re Armstrong*, 288 B.R. 404, 429-31 (Bankr. E.D. Pa. 2003) (same); *In re Messinger*, 281 B.R. 568 (Bankr. M.D. Pa. 2002) (same); *see also In re Jones*, 284 B.R. 92 (Bankr. E.D. Pa. 2002) (same, but also finding that Plaintiff's recollection whether notary was present was unclear and not sufficient to establish that notary did not attend loan closing, *aff'd*, 308 B.R. 223 (E.D. Pa, 2003) (Plaintiff's unclear recollection regarding notary's presence at loan settlement was not sufficient to establish that notary was not present).

Case 2:19-cv-06285-ER Document 6-16 Filed 11/04/19 Page 59 of 89
Case 10-00265-elf Doc 151 Filed 10/03/16 Entered 10/03/16 19:42:36 Desc
Exhibit Memo of Law In Response to Defendants Motion to Dismiss Page 11 of 20

payments to address pre-petition arrears were not provided for in the plan due to the expectation that such would be addressed outside of the plan through such loss mitigation/modification. Moreover, a Stipulation was entered into immediately before confirmation that Bank of America will pay the 2009 and 2010 real estate taxes of the Plaintiff to the Bucks County Tax Claim Bureau [Bankr. Dkt. No. 168]

Second, the process of determining "finality" of BAC Home Loan Servicing's claim has been ongoing post confirmation. Addressing the ongoing process of modification and its effect on BAC Home Loan Servicing, on October 1, 2012 the bankruptcy Court issued a post-confirmation settlement Order restricting Bank of America from proceeding with collection on this claim, it reads: "Bank of America shall make no demand for payment of or seek relief from the automatic stay to initiate foreclosure proceedings…." prior to "…Bank of America's final decision on the Plaintiff's request for a loan modification." [Bankr. Dkt. No. 218].

Finally, in the instant case, doubts concerning "finality" remain in that as of the time of filing this adversary Plaintiff had not yet received her discharge and the bankruptcy has not closed. In *County Fuel Co. v. Equitable Bank Corp.*, *supra*, the bases for the Court's doubts concerning application of *res judicata* were that the allowance at issue was still subject to reconsideration under 11 U.S.C. Section 502(j) and was not "final" for purposes of appellate review. *See id.* As the Ninth Circuit correctly noted in *Siegel v. Federal Home Loan Mortgage Corp.*, 143 F. 3d 525 (9th Cir. 1998), doubts concerning "finality" should dissipate where, as in *Siegel*, "the Plaintiff has received a discharge and the bankruptcy has closed. By then any lingering doubts about 'finality' would surely have been assuaged." 143 F. 3d at 530. In contrast, in the instant case, as of the time of filing this adversary, Plaintiff had not yet received her discharge and the bankruptcy has not closed and thus doubts concerning 'finality' remain.

    **2.    The Cases Cited by Defendants Contradict Their Position That Plaintiff's Claims Are Barred by the Doctrine of Res Judicata**

In their Motion To Dismiss, Defendants cite to *Core States Bank, N.A. v. Huls America, Inc.*, 176 F. 3d 187 (3d Cir. 1994) to lay out the premise for its assertion that Plaintiff's claims are barred by *res judicata*: "The doctrines of claim preclusion and issue preclusion (*res judicata* and collateral estoppel) bar an action when the foundation upon which the claims rest has already been litigated." In *Core States*, as in the other cases BAC Home Loans Servicing cites, the bar to litigation was sought **outside the bankruptcy court post discharge.** In this particular case, the specific issue that was sought to be barred had already been specifically litigated within the confirmation process. The Court in *Core States* (citing to *Board of Trustees* below), set forth a "preclusion test" :

First, claim preclusion applies only if the current claim would have been within the jurisdiction of the court hearing the prior bankruptcy proceeding. A claim, in order to fall within the bankruptcy jurisdiction, must at least be one that "could conceivably have any effect on the estate being administered in bankruptcy."

Second, except possibly in certain unusual circumstances, claim preclusion applies <u>only if the party to be precluded **raised a claim**, such as an objection to a reorganization plan, in a prior proceeding</u>.

Finally, claim preclusion applies only if the events underlying the current claim are essentially similar to those underlying the claim made in the bankruptcy proceeding. If the current claim alleged to be precluded does not meet these three requirements it will not be precluded.

Here, the issues of, including but not limited to fraud, ownership of, and/or the right of defendants to enforce the debt, were not litigated during the confirmation process.

Defendants then cite *Board of Trustees of Trucking Employees Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992), to set forth a principle stating that Claim preclusion "gives dispositive effect to a prior judgment if a particular *issue*, although not litigated, could have been raised in the earlier proceeding. Claim preclusion requires: (1) a final judgment on the merits in a prior suit involving: (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." (emphasis added). In *Board of Trustees* the Court ruled in favor of Plaintiff, focusing on *the lack of* issue preclusion in that instance. **Issue** preclusion, rather than **claim** preclusion, is the proper focus within the bankruptcy setting. The relevant cases, particularly those cited by BAC Home Loans Servicing, focus on **issue** preclusion. The Court in *Board of Trustees* focused on the proper analysis of **issue** preclusion and stated that "**Issue** preclusion….. proscribes re-litigation when the **identical issue** already has been fully litigated." The Court then set forth a **list of factors** under which **issue** preclusion may be invoked (emphasis added):

(1) the identical *issue* was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a *full and fair opportunity* to litigate the *issue* in question. *Temple University v. White*, 941 F.2d 201, 212 (3d Cir. 1991), cert. denied, --- U.S. ----, 112 S. Ct. 873, 116 L. Ed. 2d 778 (1992).

The Court then clarified further that "A *final determination* regarding a given *specific issue*….occurs when that *narrow issue* is *actually litigated and decided*." (emphasis added)  Both the fact pattern and the enunciated principle in *Board of Trustees*, are dispositive in favor of Plaintiff in this case:

At the time the bankruptcy court approved the settlement agreement, the Fund was unaware of Mason-Dixon's alleged misrepresentations or of its own mistake concerning material facts. Unless the Fund was clairvoyant, it could not foresee that Mason-Dixon would breach the agreement. Yet Centra insists that the Fund should have brought to the court's attention claims of which it was completely unaware and claims based on conduct that had not yet occurred. Centra's argument is indefensible.

Case 2:19-cv-06281-ER Document 6-1 Filed 11/04/19 Page 61 of 89
Case 16-00265-elf Doc 15-1 Filed 10/03/16 Entered 10/03/16 19:12:36 Desc
Exhibit Memo of Law In Response to Defendants Motion to Dismiss Page 13 of 20

The situation in this case is very similar, in that it is not true that the issue (here of true ownership of the debt) "could have been raised" pre-confirmation. Plaintiff here has objected to a claim, post -confirmation (though not post discharge), once it learned of material facts which would invalidate the Claim, but which were concealed by the Creditor (National Residential Assets Corp) and its purported servicer and filer of the Claim (BAC Home Loans Servicing), during the confirmation process and only recently became known to Plaintiff.

In the instant case the identical issue was _not_ previously decided and there was no final judgment. But certainly, given the deceit perpetrated by Creditor and its Claim filer/purported-servicer, Plaintiff/Plaintiff, "the party against whom the bar" would be asserted, could not have had a "***full and fair opportunity*** to litigate the ***issue*** in question."

### 3. *Res Judicata* Effect Cannot be Asserted Where, As Here, A Legal Nullity Exists

The AOM features not only a false acknowledgement, but also an encumbrance upon real property based on a fraudulent AOM is null and void. Such a document is void at its inception, a fraudulent making of a writing to the prejudice of Plaintiff's rights. A fraudulent AOM lacks the voluntariness of conveyance. Therefore, it holds a unique position in the law; a legal nullity at its creation is never entitled to legal effect because void things are as no things. On December 10, 2010, at the time of the purported AOM from Bank of America to National Residential Assets Corp, Bank of America did not have title to pass as it had already assigned plaintiff's mortgage shortly after consummation of the mortgage in November of 2005. It is legally impossible for National Residential Assets Corp to have been assigned the mortgage from Bank of America would no longer had any interest in the mortgage. As such, the AOM is void, not merely voidable. That legal status cannot be changed, regardless of how long it may take for the fraud to be uncovered and/or challenged.

### D. Plaintiff's Arguments Do Not Fail As A Matter of Law

#### 1. Plaintiff Has Standing to Challenge The Assignment Since The Defects Asserted Void The Assignment

Defendants argue that Plaintiff does not have standing to challenge the assignment from Bank of America, N.A. to National Residential Assets Corp because Plaintiff was not a party to the assignment. In so doing, Defendants fail to distinguish between void and voidable assignments. It is well settled that Plaintiff can challenge an assignment of her note and mortgage if the defect asserted would void the assignment. *See Reinagel v. Deutsche*

Case 2:19-cv-04628-ER Document 6-16 Filed 11/04/19 Page 62 of 89
Case 10-80265-elf Doc 15-1 Filed 10/03/16 Entered 10/03/16 19:22:36 Desc
Exhibit Memo of Law In Response to Defendants Motion to Dismiss Page 14 of 20

*Bank National Trust Co.* (5th Cir. 2013) ___ F.3d ___ [2013 WL 3480207 at p. *3] [following majority rule that an obligor may raise any ground that renders the assignment void, rather than merely voidable]; *see also, Conlin v. Mortgage Electronic Registration Systems, Inc.* (6th Cir. 2013) 714 F.3d 355, 361 [third party may only challenge an assignment if that challenge would render the assignment absolutely invalid or ineffective or void]; *Culhane v. Aurora Loan Services of Nebraska* (1st Cir. 2013) 708 F.3d 282, 291 [under Massachusetts law, mortgagor has standing to challenge a mortgage assignment as invalid, ineffective or void]; *Gilbert v. Chase Home Finance*, LLC (E.D.Cal., May 28, 2013, No. 1:13-CV-265 AWI SKO) 2013 WL 2318890. Mortgagors challenging invalid assignments have standing to do so because they have demonstrated a concrete and particularized injury in fact, a causal connection that permits tracing the claimed injury to the defendant's actions, and a likelihood that prevailing in the action will afford some redress for the injury. If, as here, an assignment is void, then the assignee was assigned nothing and has nothing to convey to the purchaser. Where a grantor has nothing to convey the purported conveyance is a nullity, notwithstanding the parties' intent.

The cases which Defendants cite to support their contention, which is incorrect, that Plaintiff does not have standing to challenge the AOM, all involve challenges to assignment based on non-compliance of an assignment with the provisions of the pooling and servicing agreement. However, Plaintiff has <u>not</u> raised a challenge to the mortgage on non-compliance of an assignment with the provisions of the pooling and servicing agreement. Instead, as set forth above, Plaintiff has challenged the assignment of mortgage on void, not voidable, grounds.

2.    **Plaintiff's Arguments Concerning National Residential Asset Corp's Inability To Establish That It Is A Holder of the Note Or Entitled To Enforce The Note Are Well Founded And Meritorious**

Courts within the Third Circuit have not questioned the standing of Plaintiffs challenging a proof of claim based on failure to comply with the Uniform Commercial Code. *See Kemp v. Countrywide Home Loans, Inc.*, 440 B.R. 624 (Bankr. D. N.J. 2010) (sustaining Plaintiff's objection to a secured proof of claim because the claimant failed to satisfy the indorsement element for negotiation of the note under the Uniform Commercial Code); *In re Walker*, No. 10-12592 ELF, 466 B.R. 271, 2012 Bankr. LEXIS 451, 2012 WL 443014 at *5-6 (Bankr. E.D. Pa., Feb. 13, 2012) (addressing Plaintiff's argument that claimant did not have a right to enforce the note under the Pennsylvania Uniform Commercial Code but finding that the claimant complied with the UCC and had possession of the note).

Case 2:19-cv-06281-ER Document 6-1 Filed 11/04/19 Page 63 of 89
Case 18-00265-elf Doc 15-1 Filed 10/03/18 Entered 10/03/18 19:12:36 Desc
Exhibit Memo of Law In Response to Defendants Motion to Dismiss Page 15 of 20

There is abundant legal authority for the proposition that mortgage notes are negotiable instruments governed by Article 3 of the Uniform Commercial Code. *In re Walker*, *supra*. The term "negotiable instrument" is defined in 13 Pa. Cons. Stat. § 3104. *Id*. The Uniform Commercial Code establishes the requirements necessary for the transfer of a note which includes the transfer of possession of the instrument and its indorsement by the holder. 13 Pa. Cons. Stat. § 3201(b). Such an indorsement must appear on the note or on an allonge affixed to the instrument. 13 Pa. Cons. Stat. § 3204 (a).

There are three ways in which a person may qualify as the person to enforce the note. 13 Pa. Cons. Stat. § 3301. First, by being its holder (i.e., in possession of the note where the note is payable to the person or is payable to bearer). 13 Pa. Cons. Stat. §§ 1201, 3201. Second, by being a nonholder in possession who has the rights of a holder. 13 Pa. Cons. Stat. §§ 3203, 3301(2). Third, if the note has been destroyed or is lost or is in the wrongful possession of an unknown person or a person that cannot be found, by establishing that the person was formerly in possession of the note with the right to enforce when the loss of possession occurred (and the loss was not a result of a transfer of lawful seizure). 13 Pa. Cons. Stat. § 3309. *In re Walker*, *supra, citing In re Veal,* 450 B.R. 897, 910-913 (B.A.P. 9th Cir. 2011); *Kemp*, 440 B.R. at 630-34; see also 2011 UCC Ed. Bd. Report at 4-7.

Article 3 of the UCC does not purport to govern completely the manner in which those ownership interests are transferred. For the rules governing those types of property rights, Article 9 provides the substantive law. UCC § 9-109(a)(3) (Article 9 "applies to . . . a sale of . . . promissory notes"). Article 9 includes rules governing the effect of the transfer of a note on any security given for that note such as a mortgage. As a consequence, Article 9 must be consulted as to who owns or has other property interest in a promissory note. From this it follows that the determination of who holds these property interests willinform the inquiry as to who is a real party in interest in any action involving that promissory note.

UCC § 9-109(a)(3) states that Article 9 applies to any sale of a "promissory note," which is defined in § 9-102(a)(65) as "an instrument that evidences a promise to pay a monetary obligation, [or] does not evidence an order to pay . . . ." In turn, an "instrument" under Article 9 is defined as "a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment." UCC § 9-102(a)(47). If the payee seeks either to use the note as collateral or sell the note outright to a third party in a

15

Case 2:19-cv-06281-ER Document 6-16 Filed 11/04/19 Page 64 of 89
Case 16-00265-elf Doc 15-1 Filed 10/03/16 Entered 10/03/16 19:42:36 Desc
Exhibit Memo of Law In Response to Defendants Motion to Dismiss    Page 16 of 20

manner not within Article 3, Article 9 of the UCC governs that sale or loan transaction and determines whether the purchaser of the note or creditor of the payee obtains a property interest in the note. See UCC § 9-109(a)(3).

<div style="margin-left:2em">

**a.    The Proof of Claim Demonstrates That The Transfer of the Note Did Not Comply With The UCC And Is Invalid, Ineffective and/or Void**

**i)    Bank of America By Its Own Admission Never Transferred Possession Of The Note to National Residential Assets Corp.**

</div>

In its April 7, 2015 Motion to Lift Stay National Residential Assets Corp stated "Movant is unable to find the Note and will seek to prove the Note using a lost note affidavit. A copy of the lost note affidavit is attached as Exhibit A ." [Bankr. Dkt. No. 253, p. 2, paragraph 6]  First, the Lost Note Affidavit, annexed as Exhibit A to the Motion to Lift, was titled on the first page "Indemnification for Affidavit of Lost Note" but does not refer to plaintiff, her property or any person or property.  Second, the Lost Note Affidavit annexed as Exhibit A is issued by Bank of America, not National Residential Assets Corp.  [Bankr. Dkt. No. 253]. By issuing the Lost Note Affidavit, Bank of America positioned itself, not National Residential Assets Corp, as the last purported entity in possession of the note.  As such, Bank of America could not have transferred the note to National Residential Assets Corp. pursuant to the Assignment of Mortgage.  Then, on June 29, 2015, in further response to a RESPA request, the Philadelphia office of the law firm of Blank Rome, on behalf of and representing Bank of America, also contradicted KML LAW GROUP when it confirmed that Bank of New York Mellon (not National Residential Assets Corp as KML LAW GROUP asserts) is "the…owner" of plaintiff's mortgage note. (Exhibit N).   On August 11, 2015, again in further response to the same RESPA request, the Philadelphia office of the law firm of Blank Rome, contradicted KML LAW GROUP's assertions in its April 7, 2015 lift stay  [Bankr. Dkt. No. 253, p. 2, paragraph 6, emphasis added] of a lost note. In contrast, Blank Rome on August 11, 2015 stated that Bank of America is in possession of "the original mortgage note…[which]...needs to be retained." (Exhibit O). Specifically, counsel for Bank of America refuted KML LAW GROUP's "lost note" contentions and stated:

*With respect to the Letter's demand for the original note, we cannot provide you with the original mortgage note as it needs to be retained, since it documents your obligation to make payments on your mortgage. In Lieu of providing or allowing inspection of the original copy of the note, please see the copy of the Adjustable Rate Note that was enclosed with the Prior Response.*

*Id.*

Finally, on May 4, 2016, KML LAW GROUP/National Residential Assets Corp filed a Motion To Lift Stay and attached for the first time a "Lost Note Affidavit", dated December 5, 2012, which on its face is invalid. While

Plaintiff's mortgage is dated November 15, **2005**, the Affiant writes that "BANA...acquired possession of the NOTE on or before November 16, **2009**." (Dkt 283-1, Exhibit A, paragraph 5) Moreover, the "Lost Note Affidavit" is dated December 5, 2012, while the "Mortgage Assignment" is dated two years earlier on December 10, 2010. Had the "Lost Note Affidavit" been dated December 5, 2010 it would have predated the "Mortgage Assignment" dated December 10, 2010, This suggests, among other things, that Affiant lacked accurate personal knowledge of, at a minimum, the date/year of Plaintiff's mortgage. In addition, the "Lost Note Affidavit" fails to address when the note was lost, who has personal knowledge of the note, and who has personal knowledge of the note going missing. The "Lost Note Affidavit" is hearsay and lacks foundation with the affiant not even attaching documents. The Lost Note Affidavit, dated December 5, 2012, but filed for the first time on May 4, 2016, is also in direct contravention of the Blank Rome RESPA response letter, dated years later on August 11, 2015, which states that the Note is, in fact, not lost, but rather is currently being "retained." (Exhibit O) The first page of the KML LAW GROUP's Lost Note Affidavit, titled "Lost Note Affidavit/Bond - Fax Cover Sheet," defines it as "Note Type - NON INDORSED" thereby, by the purported Assignor's (Bank of America) own records, refuting any suggestion of transfer of the Note from Bank of America to National Residential Assets Corp. [Bankr. Dkt. No. 283-1, Exhibit A, page 1]

        **ii)**    **There Has Been No Endorsement of the Note By A Holder In Any Version of The Note And, In Fact, No Note At All, Indorsed Or Not, Is Annexed to the Recorded Assignment of Mortgage**

The AOM recorded at the Bucks County Recorder of Deeds does not contain any Note endorsed or otherwise. [Bankr. Dkt. No. 257, exhibit J] The copy of the note annexed to the April 7, 2015 Motion to Lift Stay does not contain an endorsement. [Bankr. Dkt. No. 253] The May 4, 2016 Motion to Motion to Lift Stay did not attach an endorsed note. [Bankr. Dkt. No. 283]

Based on the above, in this case, where, as here, there has been neither transfer of possession of the instrument nor its endorsement by the holder, both of which are necessary for the transfer of a note, 13 Pa. Cons. Stat. § 3201(b), the purported assignment to NRAC is ineffective, invalid and/or void.

        **b.**    **Since The Note Is Split From The Mortgage The Purported AOM From Bank of America N.A. To National Residential Assets Corp, Did Not Effect An Assignment of the Note and Is Therefore A Nullity**

The purported "Mortgage Assignment" from Bank of America N.A. to National Residential Assets Corp does not contain language effecting an assignment of the Note. When a note is split from a mortgage "the note becomes, as a practical matter, unsecured." Restatement (Third) of Property (Mortgage) § 5.4 cmt. A (1997). *See,*

Case 2:19-cv-04628-ER Document 6-16 Filed 11/04/19 Page 66 of 89
Case 18-00265-elf Doc 15-1 Filed 10/03/16 Entered 10/03/16 19:12:36 Desc
Exhibit Memo of Law In Response to Defendants Motion to Dismiss    Page 18 of 20

*e.g., In re Veal*, *supra*, 450 B.R. at 915  (referring to common law rule that transfer of mortgage without transfer of obligation it secures renders mortgage ineffective and unenforceable in hands of transferee).  Additionally, if the mortgage  was assigned without the note, then the assignee, "having no interest in the underlying debt or obligation, has a worthless piece of paper." 4 Richard R. Powell, Powell on Real Property, § 37.27[2] (2000). *Cf. In re Foreclosure Cases*, 521 F. Supp. 2d 650, 653 (S.D. Ohio 2007) (finding that one who did not acquire the note which the mortgage secured is not entitled to enforce the lien of the mortgage); *In re Mims*, 438 B.R. 52, 56 (Bankr. S.D.N.Y. 2010) ("foreclosure of a mortgage may not be brought by one who has no title to it and absent transfer of the debt, the assignment of the mortgage is a nullity.") (*quoting Kluge v. Fugazy*, 536 N.Y.S.2d 92, 93 (N.Y. App. Div. 1988)).

The purported AOM states that it assigns the *"mortgage, together with certain note(s) described with all the interest, all liens, any rights due or to become due thereon ..."* [Italics added]  However, nowhere are any *"certain note(s) described"* including but not limited to the Mortgage Assignment and, as noted above, Bank of America N.A. did not attach the note to the Assignment of Mortgage recorded at the Bucks County Recorder of Deeds. [Exhibit B]. The purported "Mortgage Assignment" from Bank of America N.A. to National Residential Assets Corp does not contain language effecting an assignment of the Note. While the Note is referred to, that reference serves only to identify the Mortgage.  As a consequence, the Assignment does not provide any proof of the transfer of the Note to National Residential Assets Corp.  At most, it would have been proof that only the Mortgage, and all associated rights arising from it, had been assigned.  One might argue that the clauses in the assignment which follow the italicized phrase are broad enough to pick up the Note, and thus effect a transfer of it. However, after referring to  *"certain note(s) described"* but not described and not explicitly making it the object of the transfer, the words do not appear to relate back and pick up the Note just because the Mortgage mentioned the Note among its many terms but did not describe it or annex any Note indorsed or otherwise.  *See, e.g., In re Veal*, *supra*, 450 B.R. at 915. Since the purported "Mortgage Assignment" from Bank of America N.A. to National Residential Assets Corp did not effect an assignment of the note it is therefore a nullity.

Based on the above, because it did not show that it had actual possession of the Note, National Residential Assets Corp cannot establish that it was a holder of the Note, or a "person entitled to enforce" the Note. In addition, even if admissible, the purported assignment of the Mortgage is insufficient under Article 9 to support a conclusion that National Residential Assets Corp holds any interest, ownership or otherwise, in the Note. In other words,

Case 2:19-cv-06285-R Document 6-1 Filed 11/04/19 Page 67 of 89
Case 10-80265-elv Doc 15-1 Filed 10/03/16 Entered 10/03/16 19:12:36 Desc
Exhibit Memo of Law In Response to Defendants Motion to Dismiss Page 19 of 20

without any evidence tending to show it was a "person entitled to enforce" the Note, or that it has an interest in the Note, National Residential Assets Corp has shown no right to enforce the Mortgage securing the Note. Without these rights, National Residential Assets Corp cannot make the threshold showing of a colorable claim to the property that would give it prudential standing to qualify as a real party in interest.

**3.** **Plaintiff's Claim for Violation of the Automatic Stay Does Not Fail As A Matter of Law**

"[A]ctions taken in violation of the automatic stay are void, not voidable." *In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir. 2000), *citing Schwartz v. United States* (*In re Schwartz*), 954 F.2d 569, 571 (9th Cir. 1992). A party may petition the bankruptcy court for relief from the automatic stay. 11 U.S.C.S. § 362(d). However, because only an order of the bankruptcy court can authorize any further progress in the stayed proceedings, it follows that the continuation of the stayed proceeding can derive legitimacy only from the bankruptcy court order. For these reasons, the terms of an order lifting the automatic stay are strictly and narrowly construed. *Griffin v. Wardrobe* (*In re Wardrobe*), 559 F.3d 932, 935 (9th Cir. 2009); *InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 328 F. Supp. 2d 522, 528-29 (M.D. Pa. 2004) ("It is axiomatic that, due to the presumptively expansive scope of the automatic stay, relief from the stay must be narrowly construed."); *Noli v. Comm'r of Internal Revenue*, 860 F.2d 1521, 1525 (9th Cir. 1988); *Casperone v. Landmark Oil & Gas Corp.*, 819 F.2d 112, 114 (5th Cir. 1987). Importantly, the relief available to a creditor is limited to that which was specifically requested in the motion for relief. *Wardrobe*, *supra*, *citing Thornburg v. Lynch (In re Thornburg)*, 277 B.R. 719, 726-27 (Bankr. E.D. Tex. 2002) for the proposition that "[t]he bankruptcy court could not, in the Relief from Stay Order, grant relief greater than what was requested in the Relief from Stay Motion: because "[a]n Agreed Order is a contract and its interpretation is governed by basic rules of contract construction this court must find that the order on the motion for relief from the automatic stay granted the relief requested in the motion, no more no less." *Id.* at 726-27.

As set forth more fully below, only National Residential Assets Corp filed a motion to lift the automatic stay as to Plaintiff's residence. Bank of America was not referred to in the motion. Bank of America had ample opportunity to join in but did not do so. [Bankr. Dkt. 283] Bank of America was not named or referred to in the above settlement order as a creditor permitted to proceed against Plaintiff's property. Instead, the stay was lifted "in order to permit National to enforce its in rem rights in the Property, if any." The stay was not lifted in favor of Bank of America, nor any entity other than National Residential Assets Corp. Since the "Agreed Order is a contract and its interpretation is governed by basic rules of contract construction . . . . this court must find that the order on the

Case 2:19-cv-04628-ER   Document 6-1   Filed 11/04/19   Page 68 of 89
Case 16-00265-elf   Doc 15-1   Filed 10/03/16   Entered 10/03/16 19:42:36   Desc
Exhibit Memo of Law In Response to Defendants Motion to Dismiss   Page 20 of 20

motion for relief from the automatic stay granted the relief requested in the motion, no more no less . . . ." Defendants conveniently omit any acknowledgment whatsoever that Bank of America served Plaintiff with an Act 91 Notice. An Act 91 Notice is clearly an attempt to collect a debt giving Plaintiff specific deadlines and steps to avoid foreclosure.  Exhibit F. Moreover, the cases cited by Defendants concern 11 U.S.C.S. § 524 and thus are not applicable. The remaining cases cited, unlike an Act 91 Notice which has put Plaintiff on a timetable of compliance, concern materials sent to a debtor for informational purposes.

4.      **Plaintiff's Fraud Claim Does Not Fail As A Matter of Law**

Plaintiff is not pleading a "fraud on the court" claim as Defendants define such. Plaintiff has adequately pled a fraud claim which features material representations to the court, to Plaintiff, and all interested parties. Plaintiff has pled the elements of fraud with the requisite degree of specificity.

IV.      **CONCLUSION**

For the above reasons, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion to Dismiss. In the alternative, Plaintiff respectfully requests leave to amend.

Dated this 3rd day of October 2016.

By: Susan M. Boltz-Rubinstein

  /s/ Susan Boltz-Rubinstein
Susan M. Boltz-Rubinstein, Pro Se Plaintiff
3444 Wiltshire Road
Furlong, PA 18925
215-794-5160

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
| | : | |
| **SUSAN M. BOLTZ-RUBINSTEIN,** | : | |
| | : | **Bky. No. 10–16541 ELF** |
| Debtor. | : | |
| _____ | : | |
| | : | |
| | : | |
| **SUSAN M. BOLTZ-RUBINSTEIN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **BAC HOME LOANS SERVICING/BANK OF** | : | |
| **AMERICA, N.A. AND** | : | |
| **NATIONAL RESIDENTIAL ASSETS CORP.** | : | **Adv. No. 16-265** |
| | : | |
| **Defendants.** | : | |
| _____ | : | |
| | : | |
| **SUSAN M. BOLTZ-RUBINSTEIN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **BANK OF AMERICA, N.A.,** | : | |
| **UNITED GUARANTY RESIDENTIAL** | : | |
| **INSURANCE COMPANY OF NORTH** | : | |
| **CAROLINA,** | : | |
| **AIG** | : | **Adv. No. 16-362** |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

# M E M O R A N D U M

Case 2:19-cv-04628-ER  Document 6-4  Filed 11/04/19  Page 70 of 89

# I. INTRODUCTION

In these adversary proceedings, Plaintiff Susan Boltz-Rubinstein ("the Debtor") seeks damages from the Defendants based upon their purported fraud, TILA and RESPA violations, and violations of certain sections of the Bankruptcy Code, including the automatic stay provision, 11 U.S.C. §362(a).  She also seeks the invalidation of the mortgage liens on her home.

All of the Defendants are alleged to be either the holder or the servicer of the Debtor's home mortgages.  Bank of America, N.A. ("Bank of America:) is the successor by merger to BAC Home Loans Servicing.  (Adv. No. 16-265, Complaint ¶ 6).  United Guaranty Residential Insurance Company ("United Guaranty") is the mortgage subsidiary of AIG.

Presently before the court are the Defendants' motions to dismiss the complaints.  The primary issue involves the court's subject matter jurisdiction.

The Debtor claims that the bankruptcy court has jurisdiction and should exercise it, because this is a proceeding "related to" the bankruptcy case.  The Defendants argue that the bankruptcy court does not have jurisdiction because the issues presented in the complaint cannot affect the administration of the Debtor's now-concluded chapter 13 bankruptcy case.  The Defendants alternatively argue that if the bankruptcy court has jurisdiction to hear the cases, I should abstain from doing so, dismissing these cases so they may be brought in a more appropriate, non-bankruptcy forum.

As explained below, I conclude that:

1.  The court has jurisdiction over the Debtor's claim under 11 U.S.C. §362(k) and there is no reason to abstain from hearing it.

2.  The Debtor has failed to state a claim upon which relief can be granted with respect to the remaining Bankruptcy Code based claims.

3.  The court lacks jurisdiction over the Debtor's nonbankruptcy claims; and, to
    the extent that jurisdiction may exist, it is appropriate to abstain from
    exercising that jurisdiction.

## II.  PROCEDURAL HISTORY

### A.

On October 8, 2010, the Debtor commenced this bankruptcy case by filing a chapter 13

petition (Bky. No. 10-16541, Doc. #1) ("the Main Case").

Two (2) proofs of claim were filed asserting secured claims (collectively "the Mortgage

Claims") against the Debtor's primary residence ("the Property").   United Guaranty filed a

secured proof of claim for $114,027.24 on August 5, 2010, which it amended on July 15, 2011

("the United Guaranty Claim").  (Claim Nos. 1-1, 1-2).  Bank of America,[1] as servicer for

National Residential Assets Corporation ("NRAC"), filed a secured proof of claim for

$587,118.56 on March 21, 2011 ("the Bank of America Claim").  (Claim No. 17-1).  Each of the

Mortgage Claims included a claim for prepetition arrears.

The Debtor's Third Amended Plan ("the Plan") was confirmed on January 10, 2012.

(Main Case, Doc. #167).  The Plan provided primarily for the payment of priority tax claims.  It

did not provide for either of the Mortgage Claims.  In fact, the Plan did not even mention the

United Guaranty Claim.  As for the Bank of America Claim, the Plan stated that "pre-petition

mortgage arrears owed to Bank of America  .  .  .   **will not be paid through the plan**."  Id. at

¶7(f) (emphasis added).  Instead, the Plan stated that "aforesaid arrears  .  .  .  will be cured

---

[1]      The proof of claim was filed by BAC Home Loans Servicing, LP.

-3-

through the mortgage loan modification." Id. at ¶7(g).[2]

In May of 2015, the Debtor commenced two (2) adversary proceedings (Adv. Nos. 15-176 and 15-183) (the "Prior Adversaries"). The complaints in the Prior Adversaries made the same factual allegations against roughly the same parties as the instant proceedings.[3] (See Adv. No. 15-176, Doc. #1; Adv. No. 15-183, Doc. #1).[4] Following a joint hearing on June 25, 2015, this court dismissed both Prior Adversaries, determining that it lacked subject matter jurisdiction to hear the cases and would permissively abstain from deciding the cases even if it had jurisdiction. (Adv. No. 15-176, Doc. #27; Adv. No. 15-183, Doc. #17).

While those Prior Adversaries were pending, NRAC filed a motion for relief from the automatic stay on May 4, 2016, alleging that its interest in the Property was not adequately protected. (Bky. No. 10-1654, Doc. #283). The Debtor contested the motion. Following a June 23, 2016 hearing, the motion was granted. (Id., Doc. #293).

The Debtor full performed her payment obligation under the Plan. The Trustee filed his Final Report on June 16, 2016. (Main Case, Doc. # 289). The Debtor received a chapter 13 discharge on September 15, 2016. (Id., Doc. #306).

---

[2] To be clear, the Debtor did not provide for the Mortgage Claims in her plan whatsoever. She did not propose to cure her arrears through the plan, see 11 U.S.C. §1322(b)(5); nor did she seek to pay off the claims in full, see 11 U.S.C. §1325(a)(5). In other words, the Debtor made no payments under the Plan to be distributed on account of the Mortgage Claims.

[3] The Prior Adversaries were filed against BAC and United Guaranty only. They alleged the same assignment fraud and raised similar causes of action, including an FDCPA claim. The TILA, RESPA and automatic stay violation claims are new allegations in the present adversary proceedings.

[4] The Defendant in Adv. No. 15-176 was BAC Home Loans Servicing, L.P. The Defendant in Adv. No. 15-183 was United Guaranty.

-4-

## B.

On August 17, 2016, about one (1) month before the entry of the discharge order, the Debtor initiated the first of the two (2) adversary proceedings presently before the court by filing a complaint against Bank of America.  She later amended the complaint, adding National Residential Assets Corp. as a defendant.  (See Adv. No. 16-265, Doc. #'s 1, 4).

The Debtor filed the second adversary proceeding against Bank of America and United Guaranty on October 2, 2016, about one (1) month after receiving her discharge.  She later amended that complaint as well. (See Adv. No. 16-362, Doc. #'s 1,4).

The Defendants filed motions to dismiss both matters.  (Adv. No. 16-265, Doc. #10; Adv. No. 16-362 Doc. #'s 6, 7, 16, 17, 18, 19, 21, 29, 41, 42) (collectively, "the Motions").  The Debtor responded to the Motions.  (Adv. No. 16-265, Doc. #13; Adv. No. 16-362, Doc. #'s 31, 32, 34, 35, 36, 38, 39).  The Motions raise issues of subject matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), as well as the legal sufficiency of the claims asserted, see Fed. R. Civ. P.12(b)(6).  I held a hearing on the Motions on March 2, 2017, mainly dedicated to the legal issue of subject matter jurisdiction.

## III.  LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(1) challenges the existence of subject matter jurisdiction over a claim.  When a motion to dismiss challenges subject matter jurisdiction, the court must distinguish between a Rule 12(b)(1) motion that attacks the complaint on its face and one that attacks the existence of subject matter jurisdiction in fact, quite apart from the allegations in the pleadings.  In ruling on a Rule 12(b)(1) motion that attacks the complaint on its

face, as the Motions do here, the court must consider the allegations of the complaint as true.

See, e.g., In re Star Grp. Commc'ns, Inc., 568 B.R. 616, 622 (Bankr. D.N.J. 2016);  In re Merritt,

529 B.R. 845, 858-59 (Bankr. E.D. Pa. 2015), aff'd, 2016 WL 930696 (E.D. Pa. Mar. 10, 2016);

In re Funches, 381 B.R. 471, 483 (Bankr. E.D. Pa. 2008).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the

factual allegations of a complaint, see Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and

determines whether the plaintiff is entitled to offer evidence to support the claims, Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007).  A defendant is entitled to dismissal of a

complaint only if the plaintiff has not pled enough facts to state a claim to relief that is plausible

on its face. Twombly, 550 U.S. at 547.  A claim is facially plausible where the facts set forth in

the complaint allow the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In evaluating the plausibility of the plaintiff's claim, the court conducts a context-specific

evaluation of the complaint, drawing from its judicial experience and common sense.  See, e.g.,

Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009); In re Universal Marketing, Inc.,

460 B.R. 828, 834 (Bankr. E.D. Pa. 2011) (citing authorities).  In doing so, the court is required

to accept as true all allegations in the complaint and all reasonable inferences that can be drawn

therefrom, viewing them in the light most favorable to the plaintiff.  See, e.g., Hishon v. King &

Spalding, 467 U.S. 69, 73 (1984); Taliaferro v. Darby Township Zoning Board, 458 F.3d 181,

188 (3d Cir. 2006).  But, the court is not bound to accept as true a legal conclusion couched as a

factual allegation. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678.

-6-

The Third Circuit Court of Appeals has condensed these principles into a three (3) part test:

> First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pled factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quotations and citations omitted).

In assessing a Rule 12(b)(6) motion, the court may "consider the allegations in the complaint, exhibits attached to the complaint and matters of public record ... [as well as] 'undisputedly authentic' documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss.  Unite Nat'l Ret. Fund v. Rosal Sportswear, Inc., 2007 WL 2713051, at *4 (M.D. Pa. Sept. 14, 2007) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)); see also In re Angulo, 2010 WL 1727999, at *12 n. 1 (Bankr. E.D. Pa. Apr. 23, 2010).

## IV.  THE COMPLAINTS

### A. The Debtor's Factual Allegations

The Debtor has pled the following facts:

- The Debtor took out two mortgages with Bank of America.

- As was common practice in the mortgage-backed security industry, those

mortgages were immediately assigned to other entities.

- The assignments were not properly recorded.

- The notes were lost and the actual ownership of the mortgages was unclear. Knowing that they did not have a legal right to enforce either mortgage, the Defendants filed the Mortgage Claims in the Debtor's Main Case.

- The Mortgage Claims were neither provided for nor paid through the Debtor's confirmed plan; instead, the Debtor attempted to work out a loan modification to deal with the mortgage arrears.

- At some point during the bankruptcy, the Debtor realized that the Defendants did not have a right to collect the debt secured by the Mortgage Claims.

- The Debtor sent United Guaranty a request for her account payment history and the identity of the entities holding and enforcing her mortgage and the associated note, but United Guaranty did not provide this information.

- By 2016, the Debtor had not obtained a loan modification from Bank of America.

- NRAC obtained relief from the automatic stay.

- Bank of America then filed an Act 91 Notice, informing the Debtor of a default on her mortgage and stating that the Debtor must either cure the default or risk foreclosure.

- Within the notice, Bank of America did not claim that it was sent on behalf of NRAC; the only party identified was BNY Mellon, as "investor or owner" of the underlying mortgage.

### B. The Debtor's Asserted Claims for Relief

The Debtor has asserted a number of causes of action against the Defendants.  To simplify the analysis, I have taken all of the claims from both adversary complaints and grouped them into three (3) categories.

Category 1 encompasses claims under provisions of the Bankruptcy Code employed in case administration (other than the automatic stay violation claim, which is in Category 3):

1. Under 11 U.S.C. §502: the claims should be disallowed because the
   Defendants had no right to collect the debts alleged in the Mortgage Claims.

2. Under 11 U.S.C. §506(d): the Mortgage Claims should be voided because the
   Defendants do not have an enforceable security interest against the Debtor's
   Property.

3. Under 11 U.S.C. §105(a): the Defendants should be sanctioned because they
   engaged in fraud by filing a proof of claim with knowledge that they had no
   right to enforce the underlying debt.

All of the claims in Category 1 will be dismissed because they fail to state a claim upon

which relief can be granted.

Category 2  covers the non-Bankruptcy Code claims involving breach of contract, fraud

and violation of consumer protection statutes:

1. The Defendants had no right to payments, and should be ordered to return all
   payments made to them by the Debtor.

2. The Defendants committed fraud by filing the Mortgage Claims when they
   knew they did not have a right to collect the amounts alleged in the Mortgage
   Claims.

3. United Guaranty violated the Truth in Lending Act ("TILA"), 11 U.S.C.
   §1641, when it did not respond to the Debtor's request for the identity of the
   holder of the note which formed the basis of the United Guaranty Claim.

4. United Guaranty violated the Real Estate Settlement Procedures Act
   ("RESPA"), 12 U.S.C. §2605(e)(2), when it did not properly respond to the
   Debtor's qualified written request.

The Category 2 claims will be dismissed for lack of jurisdiction. Alternatively, if

jurisdiction exists, the court will abstain from hearing these claims.

Category 3 is limited to the automatic stay violation claim against Bank of America.  This

claim is based on Bank of America's action in sending the Debtor an "Act 91" notice and seeks

damages under 11 U.S.C. §362(k).[5]  This sole has been adequately pled and will not be

dismissed.


# V.  ANALYSIS

## A. Category 1: The Bankruptcy Code Case Administration Claims

### 1.

The Debtor asserts claims against the Defendants under §§502, 506 and 105 of the

Bankruptcy Code.  Implicit in these claims is the premise that every provision of the Code can

give rise to a private right of action, entitling a party to relief.  This premise is incorrect.

Sections 502 and 506 both play a significant role in bankruptcy case administration, but

neither Code provision creates a freestanding private right of action.  See In re Padilla, 389 B.R.

409, 423 (Bankr. E.D. Pa. 2008).[6]  This principle is fortified in this case by the fact that the

---

[5]      An Act 91 notice is a pre-foreclosure notice required by statute to be sent to certain
residential homeowners prior to the initiation of mortgage foreclosure proceedings.  See 35 P.S. §§
1680.402c(a), 1680.403c(a).


[6]      In Padilla, I pointed out that:

> [C]ourts have held that a creditor's violation of particular Bankruptcy Code
> provisions does not give rise to a private right of action. Many courts have
> declined to find a private right of action under §§ 363, 502, 506, 521, 524 and
> 1322 of the Bankruptcy Code. . . .  See Alan M. Ahart, The Limited Scope of
> Implied Powers of A Bankruptcy Judge: A Statutory Court of Bankruptcy, Not A
> Court of Equity, 79 Am. Bankr. L.J. 1, 9–11 & nn. 60–71 (2005) (collecting
> cases) ("Ahart"); see generally Wisniewski v. Rodale, Inc., 510 F.3d 294,
> 298–301 (3d Cir. 2007) (discussing Supreme Court jurisprudence on implied
> private rights of action under federal statutes).

> In this Circuit, the Court of Appeals has spoken definitively on the
> subject of a private right of action under 11 U.S.C. § 506 .  .  .  .  See In re
> Joubert, 411 F.3d 452, 456 (3d Cir. 2005); see also In re Figard, 382 B.R. 695
> (continued...)

-10-

Debtor seeks a remedy for purported violations of section 502 and 506 <u>after</u> her case has been completely administered and her discharge has been entered. With the Plan confirmed and performance under the Plan completed, §§502 and 506 have no further role to play in administering this case.

<div align="center">

**2.**

</div>

The Debtor apparently anticipated this issue and invokes §105(a) as an alternative way to remedy the alleged violations of §§502 and 506.

It is black letter law that §105(a) may be invoked only as authority for the entry of an order enforcing another Code provision. This provision may not be employed to create a new substantive right; nor will it provide a remedy that conflicts with another Code provision. <u>See, e.g.</u>, <u>Moushigian v. Marderosian</u>, 764 F.3d 123, 127-28 (1st Cir. 2014); <u>see also</u> <u>Law v. Siegel</u>,134 S. Ct. 1188, 1194 (2014).

While perhaps there are circumstances in which it may be appropriate for the court to exercise its §105(a) power to enforce a §502 or §506 determination,[7] this is not such an instance.

---

[6](...continued)
(Bankr. W.D. Pa. 2008); <u>Patrick v. Dell Fin. Servs., L.P.</u> (In re Patrick)*, 344 B.R. 56 (Bankr. M.D. Pa. 2005).

389 B.R. at 423.

[7]    I emphasize the word "perhaps." The existence of 11 U.S.C. §1327(a), which provides that a confirmed plan is binding on all creditors, regardless whether the plan provides for a creditor's claim, makes it difficult to identify the circumstances in which there would be an independent need to enforce determinations under §502 or §506. <u>See generally</u> <u>In re Thomas</u>, 497 B.R. 188, 203-04 (Bankr. E.D. Pa. 2013) ("relief from the bankruptcy court to enforce 11 U.S.C. § 1327 is available through exercise of the court's authority under 11 U.S.C. § 105(a)").

<div align="center">-11-</div>

Essentially, the Debtor's theory is that an entity with some relationship to the subject note and

mortgage, but which lacked the power to enforce payment of the note, has improperly filed a

proof of claim. Certainly, if proven, the Debtor's allegations might support an objection to and

disallowance of the proof of claim. But that is as far as 11 U.S.C. §502(b) goes.[8] There are no

further rights provided by §502 that require vindication and therefore, no need to employ §105(a)

– especially in this case, where the Debtor did not provide for the proof of claim in the Plan and

the allowance of the claim had no effect on case administration.

At bottom, because the Plan did not provide for this claim and the filing of the proof of

claim had no effect on case administration and caused the Debtor no discernible harm, the use of

the court's §105(a) power is inappropriate. Consequently, the Debtor's attempt to leverage §105

to create a claim under §502 cannot survive the Motions.[9]

### 3.

The Debtor has invoked §105(a) in another way. She asserts that relief under §105(a) is

necessary to remedy the Defendants' alleged filing of fraudulent proofs of claims. She argues that

the mortgage companies voluntarily "brought their fraud into the court" and that the court should

sanction them through its §105 power. (Audio Transcript of Hearing, 3/2/17 at 2:45 P.M). This

theory does not fare any better.

Section 105(a) expressly authorizes the court to issue an appropriate order "to prevent an

---

[8]     11 U.S.C. §502(b) provides nine (9) grounds for the disallowance of a proof of claim.

[9]     As for 11 U.S.C. §506, the Debtor has not articulated any cogent theory for relief.

abuse of process."  11 U.S.C. §105(a).  Undoubtedly, there are circumstances in which §105 may

be invoked to vindicate the integrity of the bankruptcy process and to respond to a fraud

perpetuated or attempted to be perpetuated upon the court.  See generally In re Wilson, 409 B.R.

72, 76 n.6. (Bankr. W.D. Pa. 2009) (citing cases).  However, the facts alleged by the Debtor do

not rise to the level of abuse that would warrant intervention to protect the judicial process.

Rather, the Debtor has pled nothing more than grounds that could have resulted in the

disallowance of a proof of claim  – a claim that she did not provide for in her chapter 13 plan.

At the hearing on the Motions, the Debtor argued that if the true owner of her mortgage

had filed a proof of claim in the case, she would have opted to cure her arrears through the plan,

instead of seeking a loan modification outside of the bankruptcy process.  At the factual level,

this argument is implausible and perhaps disingenuous.

At the time the Debtor opted not to provide for Bank of America's claim in her chapter

13 plan and, instead, chose to pursue a loan modification, she believed that Bank of America was

the proper party. The Debtor discovered the alleged fraud later.  Thus, regardless of the identity

of the true mortgagee, the Debtor made a conscious choice to treat the debt in a particular way,

i.e., not to provide for the claim in her plan.  The Debtor has alleged no facts or circumstances

making it reasonable to believe that the knowledge that her mortgage was held by a different

entity would have caused the Debtor to act differently.

Furthermore, even if the Debtor had some interest in curing the default and was

discouraged from doing so due to the identities of the parties filing proofs of claim (as

implausible as that is), she has alleged no facts to suggest that she had the financial wherewithal

Case 3:19-cv-04628-ER  Document 6-4  Filed 10/04/19  Page 82 of 89

to propose and implement a cure plan for her mortgage arrears.[10]  Thus, the Amended

Complaint's conclusory allegations on the subject are insufficient.

Finally, the Debtor's legal theory essentially is that she has a cause of action for a "federal

bankruptcy tort" – i.e., that  a federal cause of action exists to remedy a creditor's misconduct in

the bankruptcy process if the misconduct causes the debtor propose and implement a chapter 13

plan that is less favorable to the debtor than an alternative plan.  Nothing in the Bankruptcy Code

suggests that such a federal cause of action exists and §105(a) cannot be stretched to create one.


**4.**

In short, none of the factual allegations and legal theories in Category 1 give rise to any

plausible entitlement for relief.


## B. Category 2: The Non-Bankruptcy Code Claims

### 1.

Bankruptcy Courts are courts of limited jurisdiction.  Bankruptcy subject matter

jurisdiction is conferred by 28 U.S.C. §1334(a) and (b) potentially extends to four (4) types of

---

[10]      Without some further factual explanation in the Amended Complaint, it is implausible
that a cure plan would have been feasible, considering that:

> (a)  a chapter 13 debtor has a general duty to provide for general unsecured creditors to a
> degree commensurate with the debtor's ability to pay, see generally 11 U.S.C.
> §1325(b);

> (b)  pursuant to the Plan, the Trustee distributed less than $7,100.00 to general unsecured
> creditors, see Trustee's Final Report Bky No. 10-16541, Doc. # 289); and

> (c)  in its proof of claim, Bank of America asserted the existence of a prepetition
> arrearage of $26,904.94.

title 11 matters:

(1) cases under title 11;

(2) proceedings arising under title 11;

(3) proceedings arising in a case under title 11; and

(4) proceedings related to a case under title 11.

The Debtor's Category 2 claims all are non-Code based claims.  They are not a

bankruptcy "case" and they do not arise under title 11[11] or in the case.[12]  This leaves "related to"

jurisdiction as the only possible source of jurisdiction.

To determine whether the bankruptcy court has "related to" jurisdiction over a claim, the

Third Circuit employs iconic standard enunciated in <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984 (3d Cir.

1984).  This test requires the court to determine

> whether <u>the outcome of that proceeding could conceivably have any effect on the
> estate being administered in bankruptcy</u> ... An action is related to bankruptcy if the
> outcome could alter the debtor's rights, liabilities, options or freedom of action
> (either positively or negatively) and which in any way impacts upon the handling
> and administration of the bankrupt estate.

<u>Pacor</u>, 743 F.2d at 994 (emphasis in original) (citations omitted).[13]

---

[11]     By definition, the non-Code based claims do not arise under the Bankruptcy Code.

[12]     A claim does not arise in a bankruptcy case just because it arises while the bankruptcy
case is pending.  "Arising in" jurisdiction involves administrative matters that can only arise in a
bankruptcy case and that would have no existence absent the bankruptcy case.  <u>Matter of Wood</u>, 825 F.2d
90, 97 (5th Cir. 1987).  Again, by definition, non-Code based causes of action do not arise in bankruptcy
cases.

[13]     Recently, in <u>In re Thorpe</u>, 563 B.R. 576, 593 n.26 (Bankr. E.D. Pa. 2017), <u>aff'd sub nom</u>.
<u>U.S. Trustee v. Thorpe</u>, 2017 WL 3084388 (E.D. Pa. July 20, 2017), I held that in the post-confirmation
context in a chapter 13 case, it is appropriate to apply the <u>Pacor</u> test for "related to" subject matter
jurisdiction rather than "close nexus" test for evaluating post-confirmation jurisdiction in a chapter 11
(continued...)

-15-

Case 3:19-cv-04628-ER Document 6-4 Filed 11/04/19 Page 84 of 89

Under <u>Pacor</u>, most questions involving the scope of the court's "related to" jurisdiction are determined by focusing on the effect, if any, that resolution of the dispute may have on the bankruptcy estate. Typically, litigation which is related to a bankruptcy case is litigation which will affect in some manner the property to be administered by the bankruptcy trustee or the amount or priority of claims to be repaid.  <u>In re Shuman</u>, 277 B.R. 638, 647 (Bankr. E.D. Pa. 2001); <u>see also</u> <u>Celotex Corp. v. Edwards</u>, 514 U.S. 300, 308 n. 6 (1995) (bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor).

**2.**

The Debtor has not advanced any theory why the various non-Code based claims can have an impact on the administration of her chapter 13 case.  Indeed, it is self-evident that the non-Code based claims, all of which arose post-petition, can no longer affect a bankruptcy case that has been fully administered and is ready to be closed.

At the hearing on March 2, 2017, the Debtor argued that her plan was affected because the Defendants' fraud denied her the right to make informed decisions.  The Debtor thus contends that she would have done things differently if she had known about the misrepresentations.

Certainly, hindsight is 20/20, but that is beside the point. Whatever might have happened differently had the Debtor been aware of different "facts," her chapter 13 plan has been confirmed and completed; it is no longer possible to alter the administration of this case.

The remedy the Debtor seeks for her contract and fraud claims further illustrates this

---

[13](...continued)
case enunciated by the Third Circuit in <u>In re Resorts Int'l, Inc.</u>, 372 F.3d 154 (3d Cir. 2004).

court's lack of jurisdiction.  She seeks the return of money she paid – all of which was paid to a

creditor that was not provided for in her confirmed plan, and some of which was paid prepetition.

If the Debtor recovered that money, there would be <u>no</u> impact on the completed plan.  The same

holds true with respect to the Debtor's TILA and RESPA claims.


### 3.

A finding of no subject matter jurisdiction is ordinarily sufficient to resolve a case.

However, even if there is subject matter jurisdiction over any of these Category 2 claims, it is

appropriate to abstain under 28 U.S.C. §1334(c)(1).  <u>See generally</u> <u>Sinochem Intern. Co. Ltd. v.</u>

<u>Malaysia Intern. Shipping Corp.</u>, 549 U.S. 422, 429-31 (2007) (a federal court may choose

among threshold grounds for declining to decide a case on the merits and, if it does so, need not

necessarily determine whether it has subject matter jurisdiction).

There are a number of factors used to determine whether a bankruptcy court should

permissively abstain from deciding a matter

> (1) the effect on the efficient administration of the estate; (2) the extent to which
> state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled
> nature of applicable state law; (4) the presence of a related proceeding
> commenced in state court or other non-bankruptcy court; (5) the jurisdictional
> basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or
> remoteness of the proceeding to the main bankruptcy case; (7) the substance rather
> than the form of an asserted "core" proceeding; (8) the feasibility of severing state
> law claims from core bankruptcy matters to allow judgments to be entered in state
> court with enforcement left to the bankruptcy court; (9) the burden on the court's
> docket; (10) the likelihood that the commencement of the proceeding in
> bankruptcy court involves forum shopping by one of the parties; (11) the existence
> of a right to a jury trial; and (12) the presence of non-debtor parties.

<u>E.g.</u>, <u>Allen v. J.K. Harris & Co., LLC</u>,  331 B.R. 634, 645 (E.D. Pa. 2005)

In this proceeding, the most relevant factors are: the questionable jurisdictional basis for

determining the claims in the bankruptcy court, the effect on the administration of the bankruptcy

plan or estate, the degree of remoteness from the main bankruptcy case, the feasibility of severing

bankruptcy claims from non-bankruptcy claims, and the possibility of forum shopping.  See In re

Fruit of the Loom, 407 B.R. 593, 599 (Bankr. D. Del. 2009); In re Loewen Grp. Int'l, Inc., 344

B.R. 727, 729-30 (Bankr. D. Del. 2006).

 As discussed above in relation to subject matter jurisdiction, the adjudication of these

non-Code claims cannot impact the plan or bankruptcy estate.  See part V.B.2, *supra*. The claims

are easily severed from the bankruptcy process; they appear to be included in these adversaries

mainly because the events giving rise to the claims occurred during the bankruptcy.  The

Debtor's filing of these adversary proceedings in this court, when the near-identical Prior

Adversaries already were dismissed and her plan completed, also gives rise to an inference that

the Debtor chose the bankruptcy forum for its collateral effects, rather than as an appropriate

arena in which to litigate the merits of her claims.  At the hearing, the Debtor stated that she

could not bring these second-category actions in a state court because she would lose, hinting that

state courts did not take quiet title actions or mortgage assignment fraud seriously.  (Audio

Transcript of Hearing, 3/2/17 at 2:30 P.M.).  This strongly implies that the Debtor is forum

shopping.

 For all of these reasons, I would abstain from hearing the causes of action in Category 2

even if the bankruptcy court had subject matter jurisdiction.

Case 2:19-cv-04628-ER   Document 6-4   Filed 10/04/19   Page 87 of 89

## C. Category 3: The Stay Violation Claim

As discussed earlier, the Bankruptcy Code does not generally create private rights of action that are separable from the administration of a case.  One of the few exceptions is 11 U.S.C. §362(k), which creates a cause of action for damages and attorney fees for willful violations of the automatic stay.  See, e.g., In re Repine, 536 F.3d 512, 519 (5th Cir. 2008).

The cause of action under 11 U.S.C. §362(k) exists to vindicate the power of the automatic stay, a key part of the bankruptcy process.  In re Schwartz-Tallard, 803 F.3d 1095, 1100 (9th Cir. 2015).  Upholding the power of the stay is so vital to the exercise of a bankruptcy court's in rem powers that a court may hear a stay violation claim even after confirmation of a plan.

The Third Circuit's explanation of a willful stay violation is:

> when a creditor violates the stay with the knowledge that the bankruptcy petition has been filed.  Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional .... [A] creditor's 'good faith' belief that he is not violating the automatic stay provision is not determinative of willfulness....

In re Lansaw, 853 F.3d 657, 664 n.4 (3d Cir. 2017) (quoting In re Lansdale Family Rests. Inc., 997 F.2d 826, 829 (3d Cir. 1992)).  This willful violation must have caused actual damages, but actual damages in a stay violation case are construed broadly and can include emotional distress. Lansaw, 853 F.3d at 667.

In the complaint, the Debtor alleges that, while the stay was in place, Bank of America sent an Act 91 notice stating that the Debtor's mortgage was in default and that if she did not cure the default a foreclosure would be filed against her.  The Debtor alleges that Bank of America was acting on behalf of BNY Mellon when it filed this Act 91 notice.  The Debtor

-19-

produced evidence that as recently as August 6, 2016, Bank of America claimed it was moving to

foreclose on behalf of BNY Mellon, which Bank of America described as the "investor or

owner" of the note.  (Adv. No. 16-265, Am. Complaint Exhibits A, E).

Bank of America indisputably had knowledge of the automatic stay; it was actively

involved in the case as of the petition date.  Accordingly, if Bank of America acted on behalf of

BNY Mellon (rather than NRAC, which had obtained relief from the automatic stay), it may have

wilfully violated the automatic stay.  The Debtor alleges that this violation has caused her actual

and emotional damages.

These allegations are sufficient to state a claim for a violation of the automatic stay, and

therefore, this cause of action will not be dismissed.[14]

---

[14]     Although this claim has survived a motion to dismiss, I caution the Debtor that it may not
be long lived.

The Debtor concedes that NRAC obtained relief from the stay before the Act 91 notice
was sent.  It is well-settled that an entity that obtains stay relief can delegate that relief to an agent, which
can properly take action without violating the stay.

The Debtor has questioned the nature of the relationships among Bank of America,
NRAC and BNY Mellon with respect to her note and mortgage during this bankruptcy.  At the March 2,
2017 hearing on the Motions, Bank of America's counsel also represented NRAC and stated that: (a)
NRAC owns the legal interest in the mortgage; (b) BNY Mellon is an investor in the securitized trust
which obtains the beneficial interest in the mortgage; and (c) Bank of America services this mortgage
on behalf of both these interests.  Additionally, Bank of America has represented that it merged with NRAC
into a single entity.  Under either of these scenarios, stay relief obtained by NRAC might have been
properly exercised by Bank of America.  However, at the motion to dismiss stage, there is no evidentiary
record to support Bank of America's representations in response to the Motions.  Of course, that could
change at summary judgment.

## VI.  CONCLUSION

For the reasons discussed, the Complaint in Adv. No. 16-362 will be dismissed in its

entirety.  Adversary 16-265 will be dismissed, with the exception of Count IV, which states a

claim based upon 11 U.S.C. §362(k).

An order consistent with this Memorandum will be entered.

Date:  **September 18, 2017**        _____

**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY JUDGE**